**Dismissed and Majority and Dissenting Opinions filed April 10, 2014.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

---

## NO. 14-13-00616-CV

---

### FREDERIC JARDIN, Appellant

### V.

### SOREN MARKLUND, DOUGLAS WENE AND CHEM32, LLC, Appellees

---

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2013-14485**

---

## MAJORITY OPINION

In this accelerated appeal, appellant Frederic Jardin challenges the trial court's denial of his motion to dismiss the lawsuit under Chapter 27 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001-27.011. Chapter 27 is the Texas Anti-SLAPP statute, referred to as the Texas Citizens' Participation Act (TCPA). Concluding that the TCPA does not apply, we dismiss this appeal for lack of jurisdiction.

## *Background*

Two chemical companies, Eurecat U.S., Inc. and Chem32, are involved in a dispute involving private issues, as discussed below.  In a parallel lawsuit, Eurecat sued Chem32 for, among other things, misappropriation of confidential information and breach of fiduciary duties (the Eurecat Lawsuit).[1]  Jardin is currently Eurecat's vice president.  Appellee Soren Marklund is Eurecat's former president, while appellee Douglas Wene was the plant manager at Eurecat's Pasadena facility.  Marklund retired from Eurecat in 2011, and Wene resigned shortly thereafter.

Marklund and Wene retained their work computers when they left Eurecat. Jardin alleges that Marklund and Wene stole "computers, hard drives, software and files containing Eurecat's confidential, proprietary information, and trade secrets." Marklund and Wene counter that they had permission to take the laptops and a desktop, onto which software licensed to Eurecat that contained proprietary information had been installed.  Marklund alleges he was told that the software did not need to be removed from his laptop.

After leaving Eurecat, Marklund and Wene formed appellee Chem32, LLC, a competing company.  Eurecat then sued appellees.  Eurecat obtained a temporary restraining order enjoining appellees from "using or disclosing any misappropriated computer software or firmware programs and packages that belong to Eurecat or are, or contain, Eurecat's confidential and proprietary information" and "intentionally deleting, destroying or discarding any files or other documents that belong to Eurecat or that contain confidential or proprietary information that belongs to Eurecat" and ordering appellees to return "any and all files, property, software, firmware, and equipment that is the property of Eurecat."

---

[1] Both companies provide catalyst activation services to refineries and chemical plants.

2

The trial court signed an agreed temporary injunction requiring appellees to surrender any documents and intellectual property belonging to Eurecat.

Appellees produced documents in the Eurecat Lawsuit that revealed the company Haldor Topsoe, a client of Eurecat, was also a client of Chem32. Eurecat's attorney thereafter sent the representative of Haldor Topsoe a letter in which he alleged, among other things, that appellees—

> had taken numerous documents, computers, computer files, and computer programs that belonged to Eurecat and that contain Eurecat's proprietary information and were using those materials in their competing business. We have obtained restraining orders and an injunction requiring them to return the stolen material, and to not use Eurecat's property and information, but they have not fully complied with all of those orders.

Eurecat's attorney subsequently emailed Haldor Topsoe, seeking an agreement from Haldor Topsoe not to do business with Chem32 and stating, among other things: "Under the circumstances, we think that continuing to do business with Chem32 . . . would be tantamount to participating in the misappropriation of Eurecat's confidential and proprietary information." Haldor Topsoe's representative later stated that Haldor Topsoe stopped doing business with Chem32 because of these communications.

Appellees then filed this lawsuit, bringing claims against Jardin for defamation, business disparagement, and tortious interference.[2] Jardin filed a motion to dismiss under the TCPA on the grounds that appellees' claims were based on the exercise of Jardin's constitutionally-protected rights to petition and of association. After a hearing, the trial court denied the motion.

---

[2] Appellees contend that they filed this lawsuit separately from the Eurecat Lawsuit because the joinder deadline had passed in that case. This lawsuit was initially assigned to the 61st District Court, but it subsequently was transferred to the 133rd District Court, which also presides over the Eurecat Lawsuit.

3

## *Discussion*

Jardin argues the trial court erred by denying his motion to dismiss appellees' claims for defamation, business disparagement, and tortious interference because (1) the lawsuit was filed in violation of Jardin's rights to petition and of association,[3] *see* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1), (3); (2) the TCPA's commercial activity exemption does not apply; (3) appellees did not establish "a prima facie case for each element of the[ir] claim[s]," *see id.* § 27.005(c); (4) the judicial proceeding privilege shields Jardin from liability on appellees' claims; and (5) appellees' argument that the TCPA is unconstitutional is unmeritorious. Appellees argue (1) the court does not have jurisdiction over this interlocutory appeal; (2) the TCPA does not apply because appellees' claims arise from commercial activity exempted from the statute; (3) appellees presented sufficient evidence of their claims to overcome dismissal under TCPA section 27.005; (4) the defense of judicial proceeding privilege is not a basis for dismissal under the TCPA and does not apply to all of appellees' claims; and (5) the TCPA is unconstitutional.

As a threshold matter, we first address whether we have jurisdiction over this interlocutory appeal. Our jurisdiction hinges on whether an interlocutory appeal is available from an express order granting or denying a motion to dismiss under the TCPA and whether the TCPA applies.

## I.    Review of Express Order Granting or Denying Motion to Dismiss

In asserting that we lack jurisdiction, appellees cite a Fort Worth Court of Appeals opinion that holds a court of appeals has no interlocutory appellate jurisdiction to review an order denying a motion to dismiss under the TCPA. *See*

---

[3] The right of association refers to the First Amendment's free speech, assembly and petition guarantees. *See Osterberg v Peca*, 12 S.W.3d 31, 46 (Tex. 2000).

*Jennings v. Wallbuilder Presentations, Inc.*, 378 S.W.3d 519, 524 (Tex. App.—Fort Worth 2012, pet. denied). However, we have held the opposite. *See Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14-12-00896-CV, 2013 WL 407029, at *3-4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, Order) (holding that the TCPA allows an interlocutory appeal from an express order granting or denying a motion to dismiss); *see also Fitzmaurice v. Jones*, 417 S.W.3d 627, 630-31 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding [mand. denied]); *Rehak Creative Servs. Inc. v. Witt*, 404 S.W.3d 716, 725 n.4 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Moreover, the Legislature subsequently revised Chapter 54 of the Civil Practice and Remedies Code to provide for the interlocutory appeal of a trial court's denial of a motion to dismiss filed under the TCPA. *See* Act of May 24, 2013, 83d Leg., R.S., H.B. 2935, § 4 (to be codified at Tex. Civ. Prac & Rem. Code § 54.014(a)(12)) (the amendment); *see also Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2013 WL 4516106, at *3 (Tex. App.—Austin Aug. 21, 2013, no pet.) (mem. op.). This amendment became effective on May 24, 2013. *See Kinney*, 2013 WL 4516106, at *3 (noting that since amendment received a vote of two-thirds of the members of each house of the Legislature, it became effective immediately).

The trial court denied the motion to dismiss on June 19, 2013. Thus, the amendment was in effect when the motion was denied. *See id*. at *4 ("Procedural, remedial, and jurisdictional laws should be enforced as they exist at the time the judgment is rendered."). Moreover, the amendment is retroactive because it is procedural and does not take away or impair the parties' vested rights: it simply changes the time at which an appellate court can hear a case.[4]  *Id*. For these

---

[4] Generally, courts presume that the Legislature intends statutes and amendments to operate prospectively unless they are expressly made retroactive. *Kinney*, 2013 WL 4516106, at *4. However, this general rule does not apply when the statute or amendment is procedural,

reasons, we have jurisdiction to review the trial court's grant or denial of a motion to dismiss under the TCPA.

## II. Application of the TCPA

Whether the TCPA applies also implicates our jurisdiction over this matter. *See id.* If Jardin failed to invoke the provisions of the TCPA, then this court has no jurisdiction over this interlocutory appeal.[5] *See* H.B. 2935, § 4; *see also Kinney*, 2013 WL 4516106, at *4; *SJ Med. Ctr., L.L.C. v. Estahbanati*, 418 S.W.3d 867, 871 (Tex. App.—Houston [14th Dist.] 2013, no. pet.) ("This court lacks jurisdiction over an appeal from an interlocutory order unless a statute provides for an appeal from that interlocutory order."); *Whisenhunt v. Lippincott*, 416 S.W.3d 689, 695 (Tex. App.—Texarkana 2013, pet. filed) (noting movant bears initial burden of demonstrating the TCPA's applicability).

### A. Overview

The TCPA is an anti-SLAPP law, which is an acronym for "Strategic Lawsuits Against Public Participation." *Fitzmaurice*, 417 S.W.3d at 629; *see also Rehak*, 404 S.W.3d at 719. The TCPA's purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002.

The constitutional rights enumerated in the TCPA are found in the Texas

---

remedial, or jurisdictional because such statutes generally do not affect vested rights. *Id.*

[5] An interlocutory order is not appealable unless a statute expressly provides for appellate jurisdiction. *Kinney*, 2013 WL 4516106, at *4 (citing *Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex. 1998)). If the statements at issue do not fall within the provisions of the TCPA, then the amendment providing for interlocutory appeal when a trial court denies a motion to dismiss filed under the TCPA cannot apply. *Id.*

and United States Constitutions.  *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."); Tex. Const. art. I, §§ 8 ("Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press."), 27 ("The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance.").  The TCPA establishes a mechanism for early dismissal of frivolous lawsuits that threaten the free exercise of these rights.  *Fitzmaurice*, 417 S.W.3d at 629; *Rehak*, 404 S.W.3d at 719.  The statute is to be "construed liberally to effectuate its purpose and intent fully."  Tex. Civ. Prac. & Rem. Code § 27.011(b).

## B. Standard of Review

Section 27.003 of the TCPA provides that a party may file a motion to dismiss if a legal action "is based on, relates to, or is in response to [that] party's exercise of the right of free speech, right to petition, or right of association."  *Id*. § 27.003(a).  Section 27.005(b) provides that a court "shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence" that the action is "based on, relates to, or is in response to the party's exercise of . . . the right of free speech[,] right to petition[,] or right of association."[6]  *Id*. § 27.005(b).  We apply a de novo standard of review to the trial

---

[6] However, "[t]he court may not dismiss a legal action . . . if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."  Tex. Civ. Prac. & Rem. Code § 27.005(c).  The moving party has the initial burden to show the required elements under subsection (b), and then the burden shifts to

court's determination regarding the propriety of dismissal under section 27.005. *Rehak*, 404 S.W.3d at 725-26.

We presume when the Legislature enacts a statute that, among other things, "a just and reasonable result is intended," and "public interest is intended over any private interest." Tex. Gov't Code § 311.021. The words of a statute cannot be examined in isolation, but must be informed by the context in which they are used. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011). We rely on the plain meaning of the words, unless a different meaning is supplied by Legislative definition or is apparent from context, or unless such a construction leads to "absurd results." *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see also* Tex. Gov't Code § 311.011. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't Code § 311.011. Our analysis of the statutory text may also be informed by such matters as the "object sought to be obtained," "circumstances under which the statute was enacted," legislative history, "common law or former statutory provisions, including laws on the same or similar subjects," and the title of the provision. *See id.* § 311.023(1)-(4), (7). Similarly, we assume that when enacting a statute, the Legislature was aware of the background law and acted with reference to it. *See In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012).

### 1. Purpose

The purpose of the First Amendment of the United States Constitution is "to assure unfettered interchange of ideas for the bringing about of political and social

---

the nonmoving party to satisfy subsection (c). *Rehak*, 404 S.W.3d at 724-25 (citing Tex. Civ. Prac. & Rem. Code § 27.005(b)-(c)).

changes desired by the people." *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985). There is a distinction, however, between the protections afforded to private speech versus public speech. *See id.* at 762 (recognizing "speech solely in the individual interest of the speaker and its specific business audience . . . warrants no special protection . . . to ensure that debate on public issues will be uninhibited, robust and wide-open"); *see also Whisenhunt*, 416 S.W.3d at 697. The rights of association, of free speech, and to petition, as enumerated in the First Amendment, are related forms of speech, as discussed *infra.*

While we must construe the TCPA liberally, we likewise cannot ignore the Legislature's express purpose for enacting it. *Compare* Tex. Civ. Prac. & Rem. Code § 27.011(b) *with id.* § 27.002. Because the stated purpose of the TCPA ("Texas Citizens' Participation Act") includes the phrase "otherwise participate in government," it appears the Legislature intended to protect only communications that are analogous to participating in government. *See Whisenhunt*, 416 S.W.3d at 697. In other words, the communication must be in the public interest. *See id.*; *see also* Tex. Gov't Code § 311.021(5). Jardin argues that his exercise of the rights of association or to petition need not be in the public interest in order to invoke the TCPA, as only the "the right of free speech" is defined by the Legislature as "a communication made in connection with a *matter of public concern*." *See* Tex. Civ. Prac. & Rem. Code § 27.001(3) (emphasis added).

### 2. Language and Context

Under the TCPA:

> "Exercise of the right of association" means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests.

9

. . . .

"Exercise of the right of free speech" means a communication made in connection with a matter of public concern.

. . . .

"Exercise of the right to petition" means any of the following:

(A) a communication in or pertaining to:

> (i) a judicial proceeding;

> (ii) an official proceeding, other than a judicial proceeding, to administer the law;

> (iii) an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;

> (iv) a legislative proceeding, including a proceeding of a legislative committee;

> (v) a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;

> (vi) a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;

> (vii) a proceeding of the governing body of any political subdivision of this state;

> (viii) a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or

> (ix) a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

10

(C) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D) a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E) any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

Tex. Civ. Prac. & Rem. Code § 27.001(2)-(4).

The clear implication from these definitions is that the Legislature intended to protect communications in the public interest. *See Whisenhunt*, 416 S.W.3d at 697. Further, by using particular terms from the Texas and United States Constitutions, the Legislature intended to consider the particular meanings given those terms over centuries of jurisprudence. "In construing statutes . . . [courts] use definitions prescribed by the legislature *and* consider any technical or particular meaning that the words have acquired." *Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 828 (Tex. App.—Austin 2008, pet. denied) (emphasis added).

### 3. Legislative History

"Under the Code Construction Act, we may look to the statute's legislative history in gleaning the Legislature's intent." *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999) (citing Tex. Gov't Code § 311.023(3)). Our reading of the TCPA is bolstered by the sponsor's May 14, 2011 statement of intent, which contains the following reasoning for enacting the statute:

Citizen participation is the heart of our democracy. Whether

11

petitioning the government, writing a traditional news article, or commenting on the quality of a business, involvement of citizens in the exchange of idea[s] benefits our society.

Yet frivolous lawsuits aimed at silencing those involved in these activities are becoming more common, and are a threat to the growth of our democracy. . . . Unfortunately, abuses of the legal system, aimed at silencing these citizens, have also grown. These lawsuits are called Strategic Lawsuits Against Participation or "SLAP" suits.

Twenty-seven states and the District of Columbia have passed similar acts . . . . The Texas Citizen Participation Act would allow defendants—who are sued as a result of exercising their right to free speech or their right to petition the government—to file a motion to dismiss the suit . . . .

Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 2973, 82nd Leg., RS (2011); *see also Whisenhunt,* 416 S.W.3d at 698. The statement of intent confirms the concept gathered from reading the statute as a whole that the Legislature was attempting by this law to protect communications that may be in the public interest.

### 4. Particular Meaning of Constitutional Rights

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (alteration in original). "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *Id.*; *see also Puckett v. State*, 801 S.W.2d 188, 192 (Tex. App.—Houston [14th Dist.] 1990), *cert. denied*, 502 U.S. 990 (1991). James Madison made clear in the congressional debate on the proposed amendment that people "may communicate their will" through direct petitions to the legislature and government officials. *McDonald*, 472 U.S. at 482 (citing 1 Annals of Cong. 738 (1789)).

The entire text of the First Amendment follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of *speech*, or of the press; *or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances*." U.S. Const. amend. I (emphasis added). The Petition Clause was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. *See United Mine Workers of Am., Dist. 12 v. Ill. Bar Ass'n*, 389 U.S. 217, 222 (1967). These First Amendment rights are inseparable, *id*., and there is no sound basis for granting greater constitutional protection to statements made in a petition than other First Amendment expressions. *McDonald*, 472 U.S. at 485. Moreover, Texas constitutional provisions guaranteeing freedom of expression and assembly are coextensive with the corresponding federal guarantees. *Puckett*, 801 S.W.2d at 192. The right to petition guarantees citizen access to the institutions of government. *RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 126-27 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). In a democracy such as ours, the government acts on behalf of the people, and effective representation depends upon the ability of the people to make their wishes known to government officials. *Id*.

### C. No Invocation of the TCPA

Jardin argues that he has invoked the TCPA because the Legislature defined "[e]xercise of the right to petition" to include, among other things, "communication[s] in or pertaining to . . . a judicial proceeding," and the Legislature similarly defined "[e]xercise of the right of association" as "communication[s] between individuals who join together to collectively express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem. Code § 27.001(2), (4)(A)(i). Jardin argues Eurecat's attorney's communications to

13

Haldor Topsoe (the letter and email) invoked the TCPA because they were communications concerning a judicial proceeding. *See id*. § 27.001(4)(A)(i). Similarly, he argues his allowing or authorizing Eurecat's attorney to communicate with Haldor Topsoe invoked the TCPA as these were "communication[s] between individuals who join[ed] together to collectively express, promote, pursue, or defend common interests." *See id*. § 27.001(2).

Jardin would have us conclude that, simply by filing a pleading in a lawsuit between private parties, he has invoked the protections of the TCPA, despite the act's title, purpose, language and context, legislative history, and the particular meanings of the constitutional rights at issue.[7] Assuming without deciding that the TCPA applies to Jardin's private dispute, we conclude that the subject communications were not "based on, relate[d] to, or . . . in response" to any communications *made by Jardin*. *See id*. § 27.005(b) (requiring court to "dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence" that the action is "based on, relates to, or is in response *to the party's* exercise of . . . the right of free speech[,] right to petition[,] or right of association") (emphasis added). Jardin concedes,

> Both of the communications cited by [appellees] as the basis for their claim against Jardin [the letter and email] were actually communications involving Eurecat's attorney—***not*** Jardin—and representatives of [Haldor Topsoe], and were part of the attorney's effort to obtain evidence from [Haldor Topsoe] for purposes of the Eurecat lawsuit.

(Emphasis in original.) Accordingly, the claims here are not "based on, relate[d] to, or in response to" Jardin's communications such that the exercise of his rights to petition or of association might be implicated, as is required for the TCPA to

---

[7] Likewise, Jardin would have us conclude that by employing an attorney or other agent to carry out his actions, he is exercising his freedom of association.

apply.

Jardin further argues that appellees' claims are based on, related to, or in response to his exercise of the rights to petition and of association because appellees allege Jardin "allowed" or "authorized" the subject communications. To the extent that these allegations are true, they do not alter the fact that the subject communications were made by Eurecat's attorney and related to the Eurecat Lawsuit—in which Eurecat, not Jardin, is a party.[8] Thus, even assuming the claims here are based on, related to, or in response to the exercise of the rights to petition and of association that could be imputed to a nonspeaker, those rights would belong to Eurecat—to the extent that a company may have those rights[9]— and not to Jardin.

We conclude that Jardin has not shown the claims here are based on, related to, or in response to his exercise of the rights to petition and of association. Accordingly, the TCPA does not apply, and we lack jurisdiction over this interlocutory appeal.[10] As our holding is dispositive, we need not reach the other issues raised by Jardin.[11]

---

[8] The "regarding" subject of the letter indicates the cause number and style of the Eurecat Lawsuit, and in the first paragraph of the body of the letter, the attorney states, "I represent Eurecat . . . in a lawsuit that we have filed against [appellees]."

[9] *See, e.g., Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 319, 365 (2010) (holding the government may not suppress political speech on the basis of the speaker's corporate identity).

[10] The dissent contends that Jardin's motion to dismiss was "filed under section 27.003" because the motion purports to be filed pursuant to the TCPA. However, "calling the tail a leg does not make it a leg." *See Estahbanati*, 418 S.W.3d at 869 (emphasis omitted, recounting a parable attributed to Abraham Lincoln). In the same way, referring to the TCPA in a motion to dismiss does not make the underlying legal action "based on" the exercise of constitutional rights so as to invoke the TCPA.

[11] Appellees argued below and argue on appeal that the TCPA is unconstitutional. We only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 234 n.4 (Tex. 2011).

We dismiss this appeal for lack of jurisdiction.[12]

/s/ Martha Hill Jamison
Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise (Frost, C.J., dissenting).

---

[12] *See Estahbanati*, 418 S.W.3d at 875.