**Dismissed and Opinion filed November 14, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00752-CV

---

**JOSE BANDIN, MONICA BABAYAN, AND 18 SHALLOWFORD PL., LLC, Appellants**

**V.**

**FREE AND SOVEREIGN STATE OF VERACRUZ DE IGNACIO DE LA LLAVE, Appellee**

---

## NO. 14-18-00847-CV

---

**JOSE BANDIN, MONICA BABAYAN, BANBA OFFICES, LLC, 83 WEST JAGGED RIDGE, LLC, 87 WEST JAGGED RIDGE, LLC, 175 W NEW HARMONY, LLC, 18 GRIFFIN HILL, LLC, 138 BRYCE BRANCH, LLC, 43 SPINNING WHEEL, LLC, AND TERRAVENTURA DEVELOPMENTS LLC, Appellants**

**V.**

**FREE AND SOVERIEGN STATE OF VERACRUZ DE IGNACIO DE LA LLAVE, Appellee**

## OPINION

In these interlocutory appeals, we are asked to decide whether the Texas Citizens Participation Act (TCPA), which safeguards "the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government," applies when two or more people allegedly conspire to convert or unlawfully appropriate property.[1] We conclude that the act, though broad, does not extend that far.

Appellants Jose Bandin, Monica Babayan, and nine limited liability companies challenge the trial court's denial of their TCPA motions to dismiss. Appellants ask us to hold that the TCPA applies to communications allegedly made among them in furtherance of a conspiracy to conduct unlawful or tortious acts of conversion or theft of property belonging to the Mexican State of Veracruz.[2] We conclude appellants have not shown Veracruz's claims in this case are within the scope of the TCPA. We dismiss the appeals for lack of appellate jurisdiction.

### *Background*

The following allegations are set forth in Veracruz's petition. Javier Duarte was the governor of Veracruz. Veracruz contends that Duarte, Bandin, and Babayan conspired to steal millions, possibly billions, of dollars from the state.

---

[1] Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.

[2] The plaintiff is the Free and Sovereign State of Veracruz de Ignacio de la Llave. The plaintiff refers to itself as Veracruz, and so will we.

Appellants and Duarte purportedly engaged in fraudulent transactions to transfer public funds into Texas LLCs created as shell companies to launder the money. Appellants purportedly invested the stolen funds in real estate in and around Houston, Texas.

Veracruz sued Duarte, Bandin, Babayan, and the Texas LLCs in four separate lawsuits, bringing claims for conversion, theft, and civil conspiracy "to steal and embezzle, and to commit fraud" and seeking a constructive trust and damages. Appellants filed TCPA motions to dismiss in each lawsuit. One motion was filed and heard in the 334th District Court and denied by operation of law. A notice of appeal was filed in that case challenging the 334th District Court's denial of the motion. Another motion to dismiss was filed in the 295th District Court. The 295th District Court consolidated all four cases and denied the three remaining motions to dismiss "as the law of the case" based on the ruling in the 334th District Court.[3] Appellants filed another notice of appeal challenging the 295th District Court's denial of the remaining motions to dismiss and filed a motion to consolidate the two appeals.[4] We did not consolidate the appeals, but they were both submitted to and considered by the same panel.

### Discussion

The TCPA is known as the Texas Anti-SLAPP statute; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 149 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 571 (Tex. App.—Fort Worth 2019, pet. denied). Despite this moniker, the legislature did not

---

[3] The 295th District Court noted that its ruling was made "without . . . any substantive review of the pending motions to dismiss." All four cases are now pending in the 295th District Court under trial court cause number 2018-06480.

[4] Duarte is not a party to the appeals.

3

impart the traditional remedies associated with SLAPP suits or use that term in the TCPA. *Kawcak*, 582 S.W.3d at 572. Several courts, including this one, have thoroughly discussed the legislature's incentive to pass the statute, which addresses the harm intended by baseless litigation that suppresses the exercise of First Amendment rights "to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." *See id.* at 571-72; *Serafine v. Blunt*, 466 S.W.3d 352, 366 (Tex. App.—Austin 2015, no pet.) (op. on reh'g) (Pemberton, J., concurring); *Jardin v. Marklund*, 431 S.W.3d 765, 769 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 27.002.

We do not rehash those discussions here, although a synopsis of the statute's purpose is integral to our analysis. The express purpose of the statute is twofold: (1) "to encourage and safeguard the [enumerated] constitutional rights," and (2) to "protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002; *Toth*, 557 S.W.3d at 149. The statute establishes a mechanism for expedited summary dismissal of suits that seek to intimidate or silence citizens from exercising their constitutional rights to free speech, of association, and to petition. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015); *Toth*, 557 S.W.3d at 149. A defendant invoking the act's protections must show by a preponderance of the evidence that the plaintiff's legal action is "based on, relates to, or is in response to" the defendant's exercise of one or more of these rights. *Lipsky*, 460 S.W.3d at 586; *Toth*, 557 S.W.3d at 149.

Appellants challenge the trial court's denial of their motions to dismiss on several grounds. In response, Veracruz argues among other things that the TCPA does not apply to its allegations. Appellants contend that the TCPA applies because exercise of the rights to free speech and of association are broadly defined under

the statute as involving communications, and conspiracies necessarily involve communications. We address only the TCPA's applicability because that issue is dispositive of these appeals.[5]

We determine the applicability of the TCPA by a de novo review. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). We construe the act liberally to effectuate its purpose and intent fully. Tex. Civ. Prac. & Rem. Code § 27.011(b); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("The TCPA casts a wide net."). Interpreting the statute has presented challenges to the courts of appeals because of the breadth of its plain language. *See Kawcak*, 582 S.W.3d at 574. In that regard, although the TCPA's express purpose is to protect constitutional rights, the statute's definitions of those rights do not necessarily "mimic the boundaries of constitutional rights" enumerated in the First Amendment. *Id*. at 575 (citing *Adams*, 547 S.W.3d at 892). Thus, we must limit our interpretation of the rights to free speech and of association to the definitions in the statute, and we do not look outside the statute to determine its applicability. *See id*.

Both the rights to free speech and of association, as defined in the act, involve communications. The statute defines "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code § 27.001(1). "Exercise of the right of free speech" is limited under the act to

---

[5] Appellants also argue that Veracruz did not establish a prima facie case for each element of its claims by clear and specific evidence and any negative inferences to be drawn from Bandin's and Babayan's assertion of Fifth Amendment rights does not rise to the level of clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c) ("The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."). Because we conclude the TCPA does not apply, we do not reach these issues.

"communication[s] made in connection with a matter of public concern."[6] *Id.* § 27.001(3); *Toth*, 557 S.W.3d at 150. Until recently, "[e]xercise of the right of association" was not similarly limited. The act defined that right as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem. Code § 27.001(2) (amended 2019).[7] Veracruz argues the communications at issue do not involve matters of public concern in Texas because they involve acts committed primarily in Mexico. We focus on whether the claims Veracruz asserted— conspiracy to convert and commit theft of public monies—implicate the type of communication envisioned in the statute as an exercise of the rights to free speech or of association.[8]

Appellants assert that Veracruz has alleged claims that are based on, relate to, or in response to appellants' exercise of their right to free speech as follows:

> [The State] claims Bandin and Babayan conspired with Duarte, which could happen only by means of communication. They purportedly contacted local business people in Veracruz and arranged for these locals to send sham invoices to the state government. Necessarily, they would have communicated with banks about sending the money "north" to the United States. To set up their "shell" corporations, Bandin and Babayan communicated with the Texas Secretary of Statement [sic], and to acquire their properties, they filed deeds with

---

[6] "Matter of public concern" is defined in one of three ways: "(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." Tex. Civ. Prac. & Rem. Code § 27.001(7).

[7] Under the amended version of the statute, "[e]xercise of the right of association" is now defined as "join[ing] together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(2). Accordingly, the act now requires the subject communication to relate to a governmental proceeding or matter of public concern to implicate the right of association.

[8] Thus, we need not analyze whether the communications at issue here involve matters of public concern.

[the] county clerk.

Appellants similarly argue that Veracruz's claims are based on, relate to, or in response to the exercise of their right of association because Veracruz alleges that appellants communicated with each other to "pursue . . . common interests" in conspiring to steal from Veracruz. Appellants take the position that the TCPA applies to any case in which a plaintiff alleges the defendants conspired to conduct illegal acts.[9]

At least one of our sister courts has addressed this issue and concluded that the right of association under the statute is not that broad. *See Kawcak*, 582 S.W.3d at 569 (involving alleged conspiracy between company officer and vendor to overcharge company and holding right of association under TCPA "requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit"). Another court held similarly as to the right to free speech in concluding that the TCPA does not encompass conspiracies to misappropriate property. *See Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 427–29 (Tex. App.—Dallas 2019, pet. denied) ("[A]ppellants were sued because they allegedly committed tortious conduct by misappropriating appellees' proprietary software and confidential information with the intent to sell or use that property."). Our court has not addressed whether the TCPA covers a conspiracy to commit theft or conversion;

---

[9] A civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968). One element of an actionable civil conspiracy is specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). This inherently requires a meeting of the minds on the object or course of action, which involves, of course, communication. *See id.*

neither has the Supreme Court of Texas.[10] We conclude that the TCPA does not extend so far.

In reaching our conclusion, we are bound by the supreme court's ruling that we "may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, [we] must apply the statute as written." *Coleman*, 512 S.W.3d at 900 (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam)). In this connection, we give effect to the legislature's intent by turning first to the statute's plain language. *See id.* at 899. We presume the legislature included each word for a purpose and purposely omitted any words not included. *See id.* But we cannot examine the words of a statute in isolation: the words must be informed by the context in which they are used. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011); *Jardin*, 431 S.W.3d at 770.

We presume that when the legislature enacts a statute, "a just and reasonable result is intended" and "public interest is favored over any private interest." Tex. Gov't Code § 311.021; *Jardin*, 431 S.W.3d at 770. As to the meaning of the words in a statute, we construe them "according to the rules of grammar and common usage," unless a different meaning is supplied by legislative definition, is apparent from context, or such a construction leads to "absurd results." Tex. Gov't Code

---

[10] A panel of this court recently held that the TCPA applied to a plaintiffs' claims for conspiracy to commit libel and intentional infliction of emotional distress. *Cunningham v. Waymire*, No. 14-17-00883-CV, 2019 WL 5382597, at *5, 8 (Tex. App.—Houston [14th Dist.] Oct. 22, 2019, no pet. h.). In that case, the defendants purportedly made false allegations of child abuse to the Department of Family and Protective Services. *Id.* at *4. We held that the plaintiffs' claims implicated the TCPA because they involved "a statement about a parent's mental health and a child's possible abuse," which "related to health, safety, or community well-being" under the definition of the exercise of the right of free speech in the statute. *Id.* at *7–8. Such a conclusion is warranted because the purpose of the statute is, in part, to protect the rights of persons to speak freely and to hold otherwise might chill truthful speech regarding concerns of child abuse. *See id.*

§ 311.011; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *Jardin*, 431 S.W.3d at 770. While we must construe the TCPA liberally, at the same time, we cannot ignore the legislature's purpose for enacting it, particularly when it is expressly included in the statute. *Jardin*, 431 S.W.3d at 771. *Compare* Tex. Civ. Prac. & Rem. Code § 27.011(b) *with id*. § 27.002.

Texas courts have noted that navigating the TCPA is treacherous because the statute is "less an 'anti-SLAPP' law than an across-the-board game changer in Texas civil litigation." *Serafine*, 466 S.W.3d at 365; *see also Kawcak*, 582 S.W.3d at 571-72. But even though the statute has broad implications, it is not without limits. *See Dyer*, 573 S.W.3d at 428. "[T]here is no constitutional right to engage in criminal behavior, commit civil wrongs, or otherwise inflict injury upon others." *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 219 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (Jennings, J., concurring).

Even as we apply the plain meaning of the definitions in the statute, we must ask whether applying the TCPA to the type of conspiracy alleged here would further the TCPA's express purpose. Construing the definitions of the rights to free speech and of association as encompassing all communications to further a civil conspiracy to commit tortious acts, as urged by appellants, would be to construe these rights in isolation from the legislature's twin purposes to protect constitutional rights and the right to file meritorious lawsuits.[11] *See* Tex. Civ. Prac. & Rem. Code § 27.002. In other words, "[t]o read out of the TCPA the requirement that movants must prove that the activities in which they . . . engaged [were] at least arguably lawful constitutionally protected activities contradicts the statute's purpose and its plain language." *Universal Plant Servs., Inc. v. Dresser-Rand*

---

[11] Or in the case of the right to free speech, construing all communications regarding a matter of public concern to further a conspiracy as included under the statute would exceed even the broad rights envisioned by the statute when considered in conjunction with its purpose.

*Group, Inc.*, 571 S.W.3d 346, 371 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (Keyes, J., concurring).

The logical conclusion to such a construction would be that one person could commit theft or conversion without implicating the act, but the TCPA would be implicated when a group of people work together to commit the same torts. Reading the act as broadly as envisioned by appellants, accordingly, would thwart a meritorious lawsuit any time a plaintiff alleges two or more persons engaged in conspiracy to commit theft or conversion. *See Cheniere*, 449 S.W.3d at 219. Applying the statute based on a distinction "hinging on whether a single tortfeasor or multiple tortfeasors acted" thus would be an anomaly leading to absurd results. *See Kawcak*, 582 S.W.3d at 584 (citing *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 194 (Tex. App.—El Paso 2017, no pet.) ("Participants to a criminal conspiracy could require a plaintiff . . . to make a clear and specific showing of a prima facie case in as few as sixty days [or] obtain a dismissal with prejudice. Conversely, a single defendant . . . might have to engage in years of discovery before seeking vindication.")).

Construing the entire TCPA and considering in context the purpose of the statute along with its definitions, we conclude that the types of communication envisioned by the statute do not encompass a conspiracy to convert or unlawfully appropriate property, as Veracruz alleges. To apply different rules based on whether one tortfeasor or multiple tortfeasors committed a civil injury would be arbitrary, and we decline to do so here. As our sister court noted, "[L]ong-established processes . . . in the rules of civil procedure that allow for the orderly sorting of the meritorious from the unmeritorious . . . are abandoned based on distinctions untethered and antithetical to the purposes of the TCPA—such as whether only one defendant or two acted to commit a civil injury." *Kawcak*, 582

10

S.W.3d at 585. We cannot extricate the definitions in the act from its express purpose. To do so would be to ignore longstanding supreme court precedent prohibiting us from isolating certain words from the whole of a statute to reach a certain outcome. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 19 (Tex. 2007) ("In determining [a statute's] meaning, we must also consider the statute as a whole and construe it in a manner which harmonizes all of its various provisions."). On this record, appellants have not shown that Veracruz's claims are based on, in response to, or related to appellants' exercise of the right to free speech or of association.

### *Conclusion*

We conclude the TCPA does not apply to claims of conspiracy to convert or unlawfully appropriate property belonging to others. Thus, appellants have not shown that the actions alleged by Veracruz are based on, in response to, or related to appellants' exercise of the right to free speech or of association. We dismiss the appeal for lack of appellate jurisdiction. *See QTAT BPO Sols., Inc. v. Lee & Murphy Law Firm, G.P.*, 524 S.W.3d 770, 780 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).


/s/     Frances Bourliot
Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

11