**Motion for Rehearing Denied, Affirmed, and Substitute Memorandum Opinion filed March 5, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00929-CV

---

### THE METHODIST HOSPITAL D/B/A HOUSTON METHODIST HOSPITAL, Appellant

### V.

### WILLIE HARVEY, Appellee

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2018-29940**

---

## S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

Appellant's motion for rehearing is denied. We withdraw our memorandum opinion of January 28, 2020, and issue the following memorandum opinion in its stead.

In this accelerated interlocutory appeal, appellant The Methodist Hospital d/b/a Houston Methodist Hospital challenges the denial of its motion to dismiss

under the Texas Citizens Participation Act ("TCPA").[1] Appellee Willie Harvey is a former Houston Methodist employee. One of Harvey's subordinates, Jason Lazo, notified Harvey's supervisor that Harvey had solicited gifts from one of Houston Methodist's vendors. Houston Methodist investigated Lazo's allegations and ultimately terminated Harvey. Harvey then filed suit against Houston Methodist and Lazo, alleging, in pertinent part, that Lazo defamed Harvey and that Houston Methodist was vicariously liable for Lazo's statements. Contending that Harvey's defamation claim is based on, relates to, or is in response to Lazo's exercise of free speech, Houston Methodist filed a motion to dismiss under the TCPA.[2] Harvey opposed the motion on the grounds that: (1) the TCPA does not apply; and (2) clear and specific evidence supports a prima facie case for each element of his defamation claim. The trial court did not rule on Houston Methodist's motion, so it was denied by operation of law.[3]

We conclude that the TCPA does not apply to Harvey's lawsuit because the communications at issue do not involve a matter of public concern. Accordingly, we affirm the trial court's denial of Houston Methodist's TCPA motion to dismiss.

## Background

Harvey is a former manager in Houston Methodist's Facilities Maintenance Department. Lazo, Harvey's subordinate, reported to a manager Lazo's belief that

---

[1] *See* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011 (West 2015). The TCPA was amended in 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. The 2019 amendments do not apply to this case, which was filed on May 3, 2018. *See id.* §§ 11-12, 2019 Tex. Gen Laws at 687 (providing that amendments apply to actions filed on or after September 1, 2019). All references to the TCPA are to the version that applies to this dispute.

[2] *See* Tex. Civ. Prac. & Rem. Code § 27.003(a).

[3] *See id.* § 27.008(a).

2

Harvey improperly solicited gifts from a hospital vendor.[4]  Houston Methodist investigated Lazo's report and thereafter terminated Harvey's employment.

Harvey filed suit against Houston Methodist and Lazo, asserting claims for, as is relevant here, defamation and tortious interference with an employment relationship.[5]  Harvey asserted that he did not instruct Lazo to request personal gifts from a vendor, and that Lazo's contrary statements to Harvey's supervisor were false and defamatory.

Houston Methodist filed a motion to dismiss under the TCPA.  Houston Methodist alleged that Harvey's defamation allegations fall within the TCPA's scope because they are based on, related to, or in response to a party's exercise of the right of free speech, which means a communication in connection with a "matter of public concern."  Houston Methodist further asserted that the alleged statements forming the basis of the claim concerned the public because they "centered on an issue related to a good, product, or service in the marketplace and/or health, safety, environmental, or economic concerns."  Houston Methodist attached an affidavit, in which Lazo averred that he emailed Houston Methodist's Facilities Maintenance Services supervisor and detailed numerous instances when he overheard Harvey requesting personal gifts from a vendor.  According to Lazo, Harvey's requests occurred during the time period when the vendor's performance or contract with Houston Methodist was under discussion.  Houston Methodist argued that Harvey's

---

[4] According to Harvey's allegations, Lazo told the supervisor that Lazo was instructed by Harvey to solicit gifts.  Lazo, in his affidavit, stated that he overheard Harvey soliciting gifts.  This minor factual discrepancy is not material to the outcome.

[5] Harvey also filed claims for negligence and wrongful termination, and he sought to hold Houston Methodist vicariously liable for Lazo's statements and conduct.  Harvey filed an amended petition on December 7, 2018, adding more factual allegations, but we do not consider the facts contained in his amended petition because he filed it after Houston Methodist's motion to dismiss was overruled by operation of law.  *See* Tex. Civ. Prac. & Rem. Code § 27.006(a); *cf. also Bacharach v. Garcia*, 485 S.W.3d 600, 602-03 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

alleged requests for "personal kickbacks" pertained to an issue related to a product or service in the marketplace because Houston Methodist's "vendor contracts are bid upon in an open market." Houston Methodist further urged that Lazo's reported statements pertained to matters of economic concern and community well-being, such as the potential for Houston Methodist to suffer economic losses if it became publicly known as a business "where kickbacks are solicited." Finally, Houston Methodist alleged that Harvey could not establish a prima facie case for every element of his defamation claim.

In response to Houston Methodist's motion, Harvey argued that "soliciting a vendor for personal kickbacks" is not a matter of public concern. Because his defamation claim is not based on, related to, or in response to a matter of public concern, Harvey continued, the TCPA does not apply to his claim and the burden did not shift to him to present prima facie proof supporting his claims.[6] Alternatively, Harvey purported to present prima facie proof on each element of his defamation and tortious interference claims in an attached affidavit.

The trial court did not rule on Houston Methodist's TCPA motion to dismiss, resulting in its denial by operation of law. Tex. Civ. Prac. & Rem. Code § 27.008(a). Houston Methodist appeals.

**Analysis**

**A.    Standard of Review and Applicable Law**

The TCPA contemplates an expedited dismissal procedure when a "legal action" is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code

---

[6] *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *In re Lipsky*, 460 S.W.3d 579, 586-87 (Tex. 2015) (orig. proceeding).

4

§ 27.003(a). Only the right of free speech is at issue here. The TCPA defines "the exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "matter of public concern" is defined in relevant part as including "an issue related to . . . environmental, economic, or community well-being; [or] a good, product, or service in the marketplace." *Id.* § 27.001(7)(B), (E). A "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The Texas Supreme Court has held that the Act may protect both public and private communications. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2016) (per curiam) (discussing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)).

In enacting the TCPA, the legislature explained that its overarching purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. "To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." *Coleman*, 512 S.W.3d at 898. In the first step, the party filing a motion to dismiss under section 27.003 of the TCPA bears the burden to show by a "preponderance of the evidence" that the "legal action" is "based on, relates to, or is in response to," as relevant to this appeal, the party's "exercise of the right of free speech." Tex. Civ. Prac. & Rem. Code §§ 27.003(a), 27.005(b); *see also Coleman*, 512 S.W.3d at 898. If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the nonmovant "establishes by clear and specific evidence a prima facie case for each essential

5

element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c); *see Coleman*, 512 S.W.3d at 899. In determining whether to dismiss an action, the trial court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a).

We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Coleman*, 512 S.W.3d at 899; *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.); Tex. Civ. Prac. & Rem. Code § 27.011(b). However, we cannot ignore the legislature's purpose for enacting the TCPA, particularly when this purpose is expressly included in the statute. *See Jardin v. Marklund*, 431 S.W.3d 765, 771 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A court's determination of whether communications are matters of public concern under the TCPA is subject to a de novo standard of review. *See Adams*, 547 S.W.3d at 894. Under the de novo standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Joselevitz*, 524 S.W.3d at 859.

## B. Application

Houston Methodist argues first that Lazo's statements are a matter of public concern because they relate to the products and services of one of its vendors, Schindler Elevator Corp., in that Harvey allegedly requested Houston Rodeo Bar-B-Q Cookoff tickets and Houston Rockets playoff tickets from Schindler and told or suggested that Schindler needed to "outdo" a previous Christmas gift. *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(E). According to Houston Methodist, these communications "generally occurred during discussions concerning Schindler's performance on projects and Schindler's contract with Houston Methodist."

6

We conclude, however, that the statements forming the basis of Harvey's claims do not relate to products or services "in the marketplace." "The words 'good, product, or service in the marketplace' . . . do not paradoxically enlarge the concept of 'matters of public concern' to include matters of purely private concern. [T]he 'in the marketplace' modifier suggests that the communication must have some relevance to a public audience of potential buyers or sellers." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, No. 18-0656, —S.W.3d—, 2019 WL 6971659, at *5-7 (Tex. Dec. 20, 2019). Harvey's alleged solicitation of gifts from Schindler do not involve a public audience of potential buyers or sellers. Instead, these matters relate to only Harvey's, Houston Methodist's, and (potentially) Schindler's private concerns.

Houston Methodist relies on *Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *5 & n.6 (Tex. App.—Austin Aug. 3, 2017, pet. denied) (mem. op.), but we are unpersuaded that *Camp* compels a different conclusion. The facts of *Camp* are easily distinguished. There, Camp, a former employer of Patterson, drafted emails and text messages to third-party customers accusing Patterson of billing the third-party customers with fraudulent invoices. *Id.* at *2-4. After Patterson discovered the texts and emails, "Patterson brought suit for defamation, business disparagement, tortious interference with prospective business relations, and intentional infliction of emotional distress, all predicated on the text and email messages." *Id.* at *5. Camp moved to dismiss Patterson's claims under the TCPA, alleging that Patterson's claims were based on Camp's exercise of free speech, specifically, communications related to goods, products, or services in the marketplace. *Id.* The Austin Court of Appeals held that the communications on which Patterson's claims were based were made in connection with issues related to goods and products sold "in the marketplace." *Id.* In today's case, Lazo reported

7

that he overheard Harvey requesting personal gifts from a vendor. There is no connection to goods or services "in the marketplace," as was present in *Camp*.

Next, Houston Methodist asserts that the TCPA applies because Lazo's statements—even though made privately among Houston Methodist employees—were a matter of public concern because they were made in connection to issues related to Houston Methodist's economic and community well-being. According to Houston Methodist, the statements "concerned [Harvey's] alleged wrongdoing and related economic and perhaps legal risks from [Harvey's] conduct", and "Lazo's statements also concern the community well-being as he reported unethical (violating Houston Methodist's policies) and possibly illegal conduct."

Houston Methodist cites *Coleman*, in which the supreme court held that the TCPA applied to a defamation claim by a former employee based on statements between supervisors and an investigator that led to his termination. *Coleman*, 512 S.W.3d at 901. *Coleman* involved statements by Coleman's supervisors in internal reporting documents and to an investigator that Coleman, a terminal technician, violated company policy by failing to gauge a tank and then reporting otherwise. *See id*. at 897-98. Coleman sued ExxonMobil and his two supervisors for defamation, alleging that their statements were untrue. *Id.* at 897. Although no harm resulted from Coleman's alleged failure to gauge the tank, one of the supervisors offered affidavit testimony that failure to gauge tanks can create serious safety and environmental risks, endanger employees' health, and affect ExxonMobil's economic interests. *Id.* at 898. The Texas Supreme Court held that, although the statements were private and among ExxonMobil employees, they related to a matter of public concern "because they concerned Coleman's alleged failure to gauge [a] tank . . . , a process completed, at least in part, to reduce the potential environmental,

8

health, safety, and economic risks associated with noxious and flammable chemical overfilling and spilling onto the ground." *Id.* at 901.

In addition to *Coleman*, the supreme court held in *Lippincott* that disparaging remarks by hospital administrators were subject to the TCPA because they concerned issues related to whether a certified nurse anesthetist properly provided medical services to patients, and the provision of medical services by a healthcare professional constitutes a matter of public concern. *See Lippincott*, 462 S.W.3d at 509-10. The statements in *Lippincott* included emailed reports that the nurse anesthetist, Whisenhunt, represented himself to be a doctor, endangered patients for his own financial gain, and sexually harassed employees. *Id*. at 509.

Again, we disagree with Houston Methodist that the statements here at issue are sufficiently connected to a matter of public concern. First, "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." *Creative Oil & Gas*, 2019 WL 6971659, at *7. Moreover, although the Supreme Court of Texas has "previously held that private communications are sometimes covered by the TCPA[,] . . . . [t]hese prior cases involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved." *Id.* (citing *Coleman*, 512 S.W.3d at 898, 901; *Lippincott*, 462 S.W.3d at 509-10). For this reason, *Coleman* and *Lippincott* are distinguishable. Here, unlike *Coleman* and *Lippincott*, there exists no comparable overarching and publicly relevant environmental, health, or safety concerns. *Cf. Creative Oil & Gas*, 2019 WL 6971659, at *7 (explaining that a private "dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words").

9

Houston Methodist asserts that Lazo's statements concerned Harvey's alleged wrongdoing and related economic or legal risks from Harvey's alleged conduct. But there is nothing to show that Harvey's alleged conduct had any potentially wider impact on the community as a whole, nor did Lazo's statements include an allegation that Harvey violated the law. Houston Methodist suggests that Lazo's report of Harvey's conduct could be construed as involving "potentially criminal" conduct and cites a Penal Code subsection criminalizing commercial bribery. *See* Tex. Penal Code § 32.43(b). Subsection (b) provides:

> A person who is a fiduciary commits an offense if, without the consent of his beneficiary, he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to the affairs of his beneficiary.

*Id.* However, Lazo did not tell his supervisor that he believed Harvey committed commercial bribery or broke any other law.[7] To the extent that Houston Methodist asserts that *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018), supports its position, we disagree. There, Adams's emails alleged that a homeowner's association "did not follow city ordinances." *Id.* The Supreme Court of Texas explained, "The allegation that the HOA repeatedly violated the law in caring for land that is open to the public is a matter of public concern . . . ." *Id.* Additionally, the court stated, "[I]n the context of a small residential community like Normandy Estates, any allegation of malfeasance and criminality by the developer and the HOA likely concerns the well-being of the community as a whole." *Id.*

---

[7] For this reason, Houston Methodist's reliance on rehearing on this court's opinion in *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.), is misplaced. In *Deaver*, this court held that statements calling for criminal charges against an attorney for identity theft related to both economic and community well-being. *See id.* Here, in contrast, Lazo did not state that Harvey committed bribery or call for his criminal prosecution.

10

Neither of these concerns are present here, and the facts of this case are more akin to those in *Creative Oil & Gas*, as we have explained.

Houston Methodist has not established that the communications at issue have any "public relevance beyond the pecuniary interests of the private parties involved." *See Creative Oil & Gas*, 2019 WL 6971659, at *7. In sum, we conclude that Houston Methodist failed to show that the communications upon which Harvey's claims are sufficiently connected to a "matter of public concern," and thus the action is not based on, related to, or in response to the exercise of the right of free speech. Accordingly, Houston Methodist did not establish that the TCPA applies to this dispute. We overrule Houston Methodist's first issue. Because of our ruling, the burden did not shift to Harvey to present prima facie proof of each element of his claims, so we need not reach Houston Methodist's second issue. *See* Tex. R. App. P. 47.1.

## Conclusion

For the foregoing reasons, we affirm the trial court's denial of Houston Methodist's TCPA motion to dismiss.


/s/     Kevin Jewell
        Justice


Panel consists of Justices Wise, Jewell, and Poissant.