**Reversed and Remanded and Majority Opinion and Concurring and Dissenting Opinion filed September 22, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00449-CV

---

## ORLANDO SANCHEZ, Appellant

## V.

## STEVE STRIEVER, Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2019-07901**

---

## M A J O R I T Y   O P I N I O N

Appellant Orlando Sanchez appeals a final order dismissing his claim for "assault by offensive physical contact" under Texas Rule of Civil Procedure 91a and the Texas Citizens Participation Act ("TCPA").[1] Sanchez asserts that dismissal based on rule 91a was error because his claim has a basis in law and fact. Separately, Sanchez challenges dismissal under the TCPA because the act does not apply to his

---

[1] Tex. Civ. Prac. & Rem. Code §§ 27.001-.011.

claim. In a third issue, Sanchez conditionally asks us to reverse the attorney-fee award in appellee's favor.

We reverse and remand.

## Background

Appellee Steve Striever poured water on Sanchez's head while Sanchez addressed the media and others during a press conference. Sanchez sued Striever, asserting a single cause of action for "assault by offensive physical contact." Sanchez sought "all damages recognizable by law," including mental anguish and exemplary damages.

Striever filed a motion to dismiss under the TCPA. He later amended the motion to add a request to dismiss under rule 91a. Striever argued that dismissal under rule 91a was proper because Sanchez's assault claim had no basis in law or fact. Additionally, he argued that the TCPA required dismissal because Sanchez's assault claim was based on, related to, or in response to Striever's exercise of his rights of free speech and association, and that Sanchez could not present prima facie proof of each essential element of his claim.

Sanchez filed a response, in which he urged among other things that the TCPA is inapplicable because the lawsuit seeks redress for assault, and Striever did not show that Sanchez's assault claim is "based on, relate[d] to, or is in response to" Striever's exercise of the rights to speak or associate freely. Sanchez's response did not mention rule 91a. Neither Striever nor Sanchez filed any affidavits with the amended motion to dismiss or the response.

2

The trial court held a hearing on Striever's amended motion to dismiss, but only on the TCPA ground.[2] Neither party submitted evidence at the hearing, which concluded without a ruling; however, the trial court invited supplemental briefing from both parties addressing how Sanchez's suit implicated Striever's First Amendment rights relative to the TCPA and how Sanchez's claim for "assault by offensive physical contact" is distinct from physical assault. The court stated that it would rule without an additional hearing after receiving supplement briefs.

Both Striever and Sanchez filed supplemental briefs. In relevant part, Striever argued that the act of pouring water on Sanchez was an exercise of his right of free speech and his right to associate with a group of protesters. He further contended that Sanchez had failed to establish by clear and specific evidence a prima facie case for each essential element of his claim. Sanchez in turn filed a supplemental brief, in which he reiterated that Striever's act of pouring water was not protected by the First Amendment and, alternatively, that prima facie evidence supported his claim, assuming the TCPA applies. Sanchez attached a video of the incident, which he contended established the elements of his assault claim. Striever did not object to the video and filed a supplemental reply citing it. A copy of the video is contained in our record.

The video is approximately twenty-four seconds long. It begins by showing Sanchez addressing several people, including reporters, though it is difficult to discern what he is saying. While Sanchez speaks, Striever approaches, extends his arm while holding a bottle of water, and pours the water on Sanchez's head. Striever

---

[2] According to our record, the part of Striever's amended motion to dismiss based on rule 91a was to be submitted without hearing. Sanchez filed a timely response to Striever's rule 91a dismissal argument before the submission date.

immediately flees and is chased by onlookers. It does not appear from the video that Striever said anything before, during, or after pouring water on Sanchez.

Striever's supplemental brief also referenced a link to a news article about the lawsuit and the underlying incident. Based on the article, and according to Striever's supplemental brief, Sanchez, then Harris County Treasurer, held a press conference advocating for the State of Texas to "take over" Houston public schools. Striever said that he was present to protest.[3]

The trial court signed a final order granting Striever's motion to dismiss on both TCPA and rule 91a grounds. The court also awarded attorney's fees to Striever. In the order, the court stated:

> First, as to Chapter 27 of the CPRC, the Court finds and concludes that the act of pouring water over Mr. Sanchez constitutes protected speech, and that the suit by Mr. Sanchez also otherwise implicates protected First Amendment rights of the Defendant. . . . Once the burden shifted, Plaintiff failed to adduce clear and specific evidence of a prima facie case of his claims. Specifically, Plaintiff did not adduce any evidence of any injury whatsoever, even if he could allegedly recover mental anguish damages under the circumstances.
>
> Second, the Court also hereby DISMISSES this suit pursuant to TRCP 91a, and hereby awards the attorney's fees and costs listed above as a one time award for both the CPRC Ch. 27 Motion and TRCP 91a Motion, and not as a duplicate award.

Sanchez timely appealed.

---

[3] Sanchez disputes these contextual facts because they are unsupported by affidavit or evidence. This dispute is not critical to our analysis.

**Analysis**

Sanchez contends that neither rule 91a nor the TCPA supports the trial court's order dismissing the lawsuit. He also requests that we vacate the attorney's fee award.

## A. Rule 91a discussion

Sanchez argues in his first issue that the trial court erroneously granted Striever's motion to dismiss under rule 91a because his claim of assault by offensive physical contact has a basis in law and fact.

Under Texas Rule of Civil Procedure 91a, "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1; *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020). "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id*. A court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action." Tex. R. Civ. P. 91a.6.

"We review the merits of a Rule 91a motion *de novo* because the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review." *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam); *In re Union Pac. R.R. Co.*, 582 S.W.3d 548, 550 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). In conducting our review, we must construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the

5

pleadings to determine whether the cause of action has a basis in law or fact. *In re Union Pac. R.R. Co.*, 582 S.W.3d at 550.

In his petition, Sanchez asserted a claim for "assault by offensive physical contact." In support, he alleged:

> On December 28, 2018, Defendant Steve Striever acted intentionally and/or knowingly when he committed an assault by offensive physical contact against Orlando Sanchez during a press conference by pouring water on his head. Defendant Striever knew or reasonably should have believed that Orlando Sanchez would regard the contact as offensive or provocative. As a result of the collision caused by Defendant Steve Striever, Orlando Sanchez suffered injuries and damages.

Sanchez sought all damages recognizable by law, including but not limited to past and future mental anguish.[4]

"In Texas, an assault is both an offense against the peace and dignity of the State, as well as an invasion of private rights." *Foye v. Montes*, 9 S.W.3d 436, 441 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The elements of a civil assault thus mirror those of a criminal assault. *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012); *Flanagan v. Womack & Perry*, 54 Tex. 45 (1880). As relevant here, a person commits criminal assault under the Texas Penal Code if the person intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Tex. Penal Code § 22.01(a)(3); *Loaisiga*, 379 S.W.3d at 256. Thus, proof of these elements can support a claim of civil assault.

Construing Sanchez's petition liberally, we conclude his claim for assault by offensive physical contact has a basis in law and fact. First, Sanchez's claim has a

---

[4] Sanchez later filed an amended petition, but the cause of action and supporting allegations contained in both pleadings are identical.

basis in law because the "allegations, taken as true, together with inferences reasonably drawn from them," would entitle him to the relief sought. *See* Tex. R. Civ. P. 91a.1. Sanchez pleaded each element of a claim under Penal Code section 22.01(a)(3) by alleging that Striever intentionally and/or knowingly caused physical contact with Sanchez by pouring water on his head, and that Striever knew or reasonably should have believed that Sanchez would regard the contact as offensive or provocative. These allegations, if true, would establish the required elements under section 22.01(a)(3). *See* Tex. Penal Code § 22.01(a)(3); *Loaisiga*, 379 S.W.3d at 256.

Striever insists that dismissal was appropriate under rule 91a because Sanchez has no personal injury to redress and no recoverable damages. A civil assault claim under section 22.01(a)(3), however, does not require personal injury. *See Foye*, 9 S.W.3d at 441; Tex. Penal Code § 22.01(a)(3). As offensive physical contact is the gravamen of the claim, the defendant is liable for contacts that are offensive and provocative regardless whether they cause physical harm. *See City of Watauga v. Gordon*, 434 S.W.3d 586, 590 (Tex. 2014); *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967) ("Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting."); *see also Foye*, 9 S.W.3d at 441; *Durban v. Guajardo*, 79 S.W.3d 198, 206 (Tex. App.— Dallas 2002, no pet.) ("[T]he basis for an assault and battery action is 'not the actual harm done to the plaintiff's body.'"). Such a claim addresses the personal indignity that often flows from an offensive or provocative invasion of personal space or interests. *See Fisher*, 424 S.W.2d at 630. Emotional distress is not merely incidental to a claim for certain forms of assault; it is "the essence" of it. *Durban*, 79 S.W.3d at 206; *see also Fisher*, 424 S.W.2d at 630. Consequently, proof of physical injury

7

is not required for a plaintiff to recover mental anguish damages for assault by offensive physical contact. *See Moore v. Lillebo*, 722 S.W.2d 683, 685 (Tex. 1986); *Fisher*, 424 S.W.2d at 630.

In the landmark *Fisher* case, for example, Emmit Fisher was standing in line at a luncheon hosted by business associates when the manager of the club approached and "snatched the plate" from Fisher's hand, shouting that Fisher, a black man, could not be served. *Fisher*, 424 S.W.2d at 629. The Supreme Court of Texas upheld a jury award in Fisher's favor, stating that recovery was permitted for "humiliation and indignity" even though no actual contact occurred so long as there was contact with clothing or an object closely identified with the body. *Id*. The court held that the "forceful dispossession of plaintiff Fisher's plate in an offensive manner was sufficient to constitute a battery." *Id*. at 630. Accordingly, Fisher "was entitled to actual damages for mental suffering due to the willful battery, even in the absence of any physical injury." *Id*. The offensive conduct in *Fisher* would qualify as assault under the current version of Penal Code section 22.01(a)(3).

Striever does not dispute that mental anguish damages can be recoverable for a claim under section 22.01(a)(3); he contends rather that Sanchez presented no evidence of mental anguish. But evidence is irrelevant to a court's rule 91a dismissal, which must be based solely on the pleadings. Tex. R. Civ. P. 91a.6. Sanchez pleaded for all damages recoverable by law, including specifically mental anguish, and he was not required to present (nor could the court consider) evidence of mental anguish damages. Sanchez's claim has a basis in law.

Second, Sanchez's claim has a basis in fact because the facts alleged are not such that no reasonable person could believe them. Tex. R. Civ. P. 91a.1. It is quite plausible that a person could pour water on a speaker's head during a press conference.

8

Accordingly, the trial court erred by granting Striever's motion to dismiss based on rule 91a. We sustain Sanchez's first issue.

## B. TCPA discussion

In his second issue, Sanchez argues the trial court erred in concluding that Striever's conduct constituted protected speech and dismissing the action under the TCPA. According to Sanchez, Striever did not demonstrate that the assault claim is based on, related to, or is in response to Striever's exercise of First Amendment rights. Striever disagrees and contends in particular that the TCPA applies because the act of pouring water on Sanchez was a protected exercise of free speech. Striever also argues that Sanchez's claim otherwise implicates Striever's right of association. Moreover, Striever continues, Sanchez failed to present prima facie evidence to support his claim.

Sanchez does not contend on appeal that he met his prima facie evidentiary burden, so the dispositive issue before us is the TCPA's applicability. The parties' respective arguments raise a serious question: whether the TCPA applies to a claim alleging assault by offensive physical contact when the defendant contends the assaultive conduct was a protected act of protest. We hold it does not.

### 1. *The TCPA*

By now it is well-known that the TCPA is an anti-SLAPP law;[5] "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 149 (Tex. App.—Houston [14th

---

[5] The Texas Legislature amended the TCPA in its most recent legislative session and the amendments are effective September 1, 2019. Because this suit was filed before the effective date of the amendments, it is governed by the statute as it existed before the amendments, and we refer to the TCPA as it existed prior to September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1-12, 2019 Tex. Gen. Laws 684, 684-87 (current versions at Tex. Civ. Prac. & Rem. Code §§ 27.001-.011).

Dist.] 2018, no pet.); *Fawcett v. Grosu*, 498 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g). The TCPA's stated purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. The act protects citizens from retaliatory lawsuits that seek to intimidate or silence them from exercising their rights in connection with matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). To accomplish its purpose, the TCPA establishes a mechanism to identify and summarily dispose of actions designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *Id*. at 589.

The TCPA establishes a three-step process for resolving a motion for expedited dismissal, *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018) (per curiam), but only the first step is at issue in today's case. To meet its initial burden and invoke the TCPA, a moving party must show by a preponderance of the evidence that a legal action "is based on, relates to, or is in response to" the moving party's "exercise of the right of free speech, . . . or right of association." Tex. Civ. Prac. & Rem. Code § 27.003(a); *see Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019).

The phrase "exercise of the right of free speech" means a "communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). "Matter of public concern" includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being;

10

(C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace. *Id*. § 27.001(7).

The phrase "exercise of the right of association" means "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id*. § 27.001(2).

In ruling on a TCPA dismissal motion, the court must consider the pleadings and any "supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. § 27.006. Although no party submitted affidavits, we will consider the evidence presented to the trial court with the supplemental briefs and included in our record because no one objected to it. *See id*. (in addition to affidavits, court may allow discovery relevant to motion); *see generally Dyer v. Tex. Comm'n on Envtl. Quality*, No. 03-17-00499-CV, 2019 WL 5090568, at *7 (Tex. App.—Austin Oct. 11, 2019, pet. filed) (mem. op. on reh'g) (evidence admitted during hearing without objection properly considered).

2. *Standard of review*

In construing the act and determining its applicability, we review statutory construction issues *de novo*. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Toth*, 557 S.W.3d at 150. As with any statute, courts must apply the TCPA as written and refrain from rewriting text that lawmakers chose. *Creative Oil & Gas*, 591 S.W.3d at 133. We must also analyze statutory language in its context, considering the specific sections at issue as well as the statute as a whole. *Castleman*, 546 S.W.3d at 688. We "must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008). We of course presume when the legislature enacts a statute that, among other things, "a just and reasonable result is intended" and "public interest is intended over any private

11

interest." Tex. Gov't Code § 311.021.  Also, our analysis of statutory text may be informed by the "object sought to be obtained," "circumstances under which the statute was enacted," legislative history, "common law or former statutory provisions, including laws on the same or similar subjects," and the title of the provision.  *See id*. § 311.023(1)-(4), (7); *Jardin v. Marklund*, 431 S.W.3d 765, 770 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The "surest guide to what lawmakers intended" is the enacted language of a statute, *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 463 (Tex. 2009), which necessarily includes any enacted statements of policy or purpose, *see, e.g.*, *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 329 (Tex. 2017).  Statutes do not always include express statements of purpose or directions for construction, but the TCPA includes both.  *See* Tex. Civ. Prac. & Rem. Code §§ 27.002, 27.011.

We view the pleadings and evidence in the light most favorable to the non-movant.  *Stallion Oilfield Servs., Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 214 (Tex. App.—Eastland 2019, pet. denied); *Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *2 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214-15 (Tex. App.—Houston [1st. Dist.] 2014, no pet.).

3.      *The TCPA does not apply to Sanchez's assault claim*

a.      Right of free speech

Striever argues that the TCPA applies because Sanchez's claim is based on, relates to, or is in response to his exercise of the rights of free speech and association. We begin by examining his assertion regarding the right of free speech, which Striever says he was exercising by the act of pouring water on Sanchez.

12

Though the TCPA's free speech definition is not fully coextensive with constitutional free speech rights—and thus the act may classify certain communications as protected even though our national and state constitutions do not[6]—the supreme court has never stated that we are to construe the act with no regard to constitutional jurisprudence. We cannot construe the act's terms liberally and faithfully to its fundamental purpose blind to the constitutional rights the act is designed to safeguard. *See* Tex. Civ. Prac. & Rem. Code §§ 27.002 (stating purpose is "to encourage and safeguard the *constitutional rights* of persons . . .") (emphasis added), 27.011(b); *Jardin*, 431 S.W.3d at 771. Therefore, we look first to whether Striever's conduct, described by him as an act of protest, is protected speech under the First Amendment to the U.S. Constitution or article I, section 8 of the Texas Constitution.

Although the First Amendment literally mentions only speech, Texas courts following the United States Supreme Court have held that the First Amendment also protects symbolic speech and expressive conduct as well as actual speech. *See, e.g.*, *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (holding that symbolic or expressive conduct may "possess sufficient communicative elements to bring the First Amendment into play"); *Faust v. State*, 491 S.W.3d 733, 745 n.31 (Tex. Crim. App. 2015). But not all modes of "communication" are protected by the First Amendment. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968) (stating, "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled as 'speech' whenever the person engaging in the conduct intends thereby to express an idea"); *see also Johnson*, 491 U.S. at 404 (recognizing *O'Brien*'s limitation on protections of symbolic speech). Throughout our nation's history, for example, courts have long held that assaultive or other types of violent acts simply are not the

---

[6] *See Adams*, 547 S.W.3d at 892.

13

sort of expressive conduct entitled to constitutional protection. "A physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993); *see Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence."). "[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection." *Roberts*, 468 U.S. at 628.

In line with this view, the United States Supreme Court has added that First Amendment protection does not extend to, among other categories of speech, "speech integral to criminal conduct." *United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (citing, *e.g.*, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498-501 (1949)). Likewise, Texas courts have concluded that speech is not protected by the First Amendment or the Texas Constitution when it is the "very vehicle" of a crime itself. *Leachman v. Stephens*, No. 02-13-00357-CV, 2016 WL 6648747, at *18 (Tex. App.—Fort Worth Nov. 10, 2016, pet. denied) (mem. op.) (op. on reh'g) (rejecting free speech arguments under First Amendment and Texas Constitution) (quoting *Garcia v. State*, 212 S.W.3d 877, 887 (Tex. App.—Austin 2006, no pet.)). Put simply, there is no constitutional right to engage in criminal behavior or commit civil wrongs. *Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 653 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Cheniere Energy*, 449 S.W.3d at 219 (Jennings, J., concurring).

The conduct alleged by Sanchez and shown on the video constitutes an assault under Texas law.[7] We therefore conclude that by pouring water on Sanchez, Striever

---

[7] It is also punishable as a class C misdemeanor. Tex. Penal Code § 22.01(c) (offense under section 22.01(a)(3) generally is a class C misdemeanor).

14

was not exercising any free speech right protected by the U.S. or Texas constitutions.[8] *See Alvarez*, 567 U.S. at 717-18; *Mitchell*, 508 U.S. at 484; *Giboney*, 336 U.S. at 498.

Because our constitutions do not protect Striever's conduct as free speech, his act can be an exercise of the right of free speech only if the TCPA deems it so. We therefore direct our attention to the act's terms, quoted above, as applied to the allegations in Sanchez's pleading, which are the "best, and all sufficient evidence of the nature" of the claim. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

As the Supreme Court of Texas has stated, the TCPA "casts a wide net," and the exercise of the right of free speech "extends to any 'communication made in connection with a matter of public concern,'" which covers "[a]lmost every imaginable form of communication, in any medium." *Adams*, 547 S.W.3d at 894 (quoting Tex. Civ. Prac. & Rem. Code § 27.001(3)). The act's broad definition can include at least certain forms of expressive conduct. *See Castleman*, 546 S.W.3d at 690 n.4. Standing alone, the statute's facial definition of "free speech" might include "communicative" conduct made in connection with a matter of public concern. Striever asserts, and we assume, that his act of pouring water on Sanchez was meant to express opposition to Sanchez's message delivered at a press conference regarding Houston public schools.

Despite the TCPA's broad implications, however, the act "has its limits" and not every communication falls under the statute. *Dyer v. Medoc Health Servs., LLC*,

---

[8] The Supreme Court of Texas has not interpreted article I, section 8 of the Texas Constitution more broadly than the First Amendment in any case that does not involve an issue of a prior restraint on free speech. *Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 106 (Tex. 2003); *cf. Davenport v. Garcia*, 834 S.W.2d 4, 7-9 (Tex. 1992) (orig. proceeding); *Ex parte Dehnert*, No. 01-20-00344-CR, — S.W.3d —, 2020 WL 3969755, at *8 (Tex. App.—Houston [1st Dist.] July 14, 2020, no pet. h.).

573 S.W.3d 418, 428 (Tex. App.—Dallas 2019, pet. denied). We cannot read section 27.001(3) in isolation or construe it in a way that renders any part of the statute meaningless. *See Castleman*, 546 S.W.3d at 688; *Columbia Med. Ctr.*, 271 S.W.3d at 256. "While 'it is not for courts to undertake to make laws "better" by reading language into them,' we must make logical inferences when necessary 'to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended.'" *Castleman*, 546 S.W.3d at 688 (quoting *Cadena Comercial*, 518 S.W.3d at 338); *see also Creative Oil & Gas*, 591 S.W.3d at 133 (stating that we apply plain meaning unless doing so would lead to absurd results); *Bandin*, 590 S.W.3d at 652; *Jardin*, 431 S.W.3d at 770.

Reading the TCPA in its entirety, its broad definition of the "exercise of the right of free speech" is necessarily restricted by the expressly stated purpose "to encourage and safeguard the *constitutional rights* of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent *permitted by law*." Tex. Civ. Prac. & Rem. Code § 27.002 (emphasis added). The TCPA plainly contemplates and encourages government participation, but only *law-abiding* participation comes within its purview. The TCPA's statement of purpose requires us to balance recognized constitutional rights against the rights of all individuals to file lawsuits to redress harm. *See Cheniere Energy*, 449 S.W.3d at 216. The TCPA exists to safeguard constitutional rights, not to protect assaultive or criminal conduct under the guise of protest. Striever has a right to participate in government to his heart's desire, but if his protestive conduct devolves into that not "permitted by law," he may not seek refuge in the TCPA when called to account for his actions in court. Striever's unbounded interpretation of the act's free speech definition would overrun the act's clearly expressed legislative purpose, rendering it effectively meaningless. We construe the act's free speech definition informed by

the act's purpose, not despite it. *See Hebner v. Reddy*, 498 S.W.3d 37, 41 (Tex. 2016) (stating that courts will not construe a statute to defeat its manifest object).

Construing the TCPA to cover assault or criminal conduct leads to absurd results. Such a reading would potentially thwart meritorious lawsuits for recoverable harm or property damage.[9] Movants could assert the TCPA to impede claims based on any number of assaultive acts, no matter how meritorious, by simply asserting that, when they engaged in the complained-of conduct, they were "protesting." We are not the first to reject an overly broad construction of TCPA definitions in light of the act's purpose due to the absurd results that would likely follow. *See, e.g.*, *Forget About It, Inc. v. BioTE Med., LLC*, No. 05-18-01290-CV, 2019 WL 3798180, at *5 (Tex. App.—Dallas Aug. 13, 2019, pet. denied) (mem. op.); *Dyer*, 573 S.W.3d at 427-29; *Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 367-68 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (Keyes, J., concurring); *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 847 (Tex. App.—Dallas 2015), *rev'd on other grounds*, 512 S.W.3d 895 (Tex. 2017); *Cheniere Energy*, 449 S.W.3d at 219 (Jennings, J., concurring); *see also Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 583 (Tex. App.—Fort Worth 2019, pet. denied) (stating, "to give the right of association the breadth advocated by Kawcak would require a reading that makes the statute a sword to protect the commission of civil wrongs and that ignores the stated purpose of the statute to protect the right to file meritorious lawsuits"). We relied on this principle recently in *Bandin* when we held the TCPA does not apply to the Mexican State of Veracruz's claim that its former governor conspired with others to misappropriate or embezzle state funds. *Bandin*, 590 S.W.3d at 653-54.

---

[9] Claims for bodily injury are specifically exempted. Tex. Civ. Prac. & Rem. Code § 27.010(c).

The TCPA establishes a procedure to identify and summarily dispose of retaliatory actions designed only to chill First Amendment rights. *In re Lipsky*, 460 S.W.3d at 584, 589. Sanchez's claim for assault by offensive physical contact is not fairly characterized as falling into that category. His assault claim is not "retaliatory" to, or factually predicated on, any message Striever may have wished to express. The assault claim is founded factually on an alleged physical intrusion of personal interests. Based on the pleading, Sanchez does not seek to silence any disagreement Striever may have had with Sanchez's positions. The pleading does not complain of any communication, and it is not for assault victims to speculate whether an actor, by his or her assaultive conduct, may or may not have intended to impart a message on a matter of public concern. Sanchez is seeking redress for the assaultive impact of Striever's conduct, not any communicative impact. As one court has stated, we cannot "blindly accept" attempts by a TCPA movant to characterize the claims as implicating protected expression. *Damonte v. Hallmark Fin. Servs. Inc*., No. 05-18-00874-CV, 2019 WL 3059884 at *5 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.). "To the contrary, we view the pleadings in the light most favorable to the nonmovant, favoring the conclusion that its claims are not predicated on protected expression." *Id*. Striever may have intended his act to convey a message in connection with a public matter, but that purported message has nothing to do with the gravamen of the claim as pleaded. *See Kawcak*, 2019 WL 761480, at *17 ("[S]imply alleging conduct that has a communication embedded within it does not create the relationship between the claim and the communication necessary to invoke the TCPA.").

In sum, the TCPA does not provide a shield to those who commit assaultive acts in the name of political protest. We hold that the TCPA cannot reasonably be construed to protect assault as an exercise of the right of free speech. Assuming that

Striever intended to communicate a message on a matter of public concern by his act of pouring water on Sanchez, we do not construe the TCPA to apply to such conduct because doing so contravenes the act's express purpose and would lead to absurd results the legislature could not have intended. In light of our holding, we need not address Sanchez's remaining argument that Striever judicially admitted that his conduct does not qualify as a protected act of free speech under the TCPA.

### b.    Discovery requests

Sanchez's original petition included several requests for production of documents. The requests generally sought communications between Striever and others regarding the press conference and Sanchez. In his brief, Striever cites the discovery requests as evidence that Sanchez's claim for assault by offensive physical contact is based on, relates to, or is in response to Striever's right of free speech or right of association.

The parties dispute whether we may consider the discovery requests in our analysis. Sanchez urges us to consider only "pleadings," as section 27.006 indicates, and that discovery requests are not "pleadings." Striever says the discovery requests were included in Sanchez's original petition and are part of the pleadings. Neither party cites authority addressing to what extent a court may consider the existence and nature of written discovery *requests* in determining whether a legal action to which the discovery pertains can meet a TCPA movant's burden to show that the action is based on, relates to, or is in response to the movant's exercise of the rights of free speech or association.

A discovery request is not a "legal action" as defined by the TCPA. *See Dow Jones & Co. v. Highland Capital Mgmt., L.P.*, 564 S.W.3d 852, 854 (Tex. App.—Dallas 2018, pet. denied) (subpoena seeking discovery from a third party is not a legal action under TCPA). The purpose of discovery is to allow a party to garner

19

relevant facts pertaining to its claims or defenses that are pleaded in a legal action. *See Johnson v. Perry Homes*, No. 14-96-01391-CV, 1998 WL 751945, at *12 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (not designated for publication).

Assuming without deciding that the requests for production included in Sanchez's original petition are properly considered as evidence in determining the TCPA's applicability, we do not believe they are sufficient to demonstrate the TCPA applies to the legal action. The requests at issue seek facts relevant to Sanchez's pleaded claim because the requested information might reveal whether Striever acted intentionally or knowingly and whether he actually knew that Sanchez would regard his conduct as offensive or provocative—required elements of the claim. *See* Tex. Penal Code § 22.01(a)(3). Sanchez seeks relief for the assault itself; he does not seek redress for the fact that Striever may have communicated with others, nor is the fact of communication with others prior to the event, if it occurred, a necessary element of the claim. As explained, we have concluded that the TCPA does not apply to Sanchez's claim for assault by offensive physical contact. Accepting Striever's view would permit TCPA movants to invoke the act when it would not otherwise apply merely because the non-movant served written discovery requests that sought communications that are believed to include statements relevant to the underlying claim.

\*       \*       \*

On the present record, we conclude that Striever has not shown that Sanchez's claim for assault by offensive physical contact is based on, related to, or in response to Striever's exercise of the rights of free speech or association. We sustain Sanchez's second issue.

## C.    Attorney's Fees and Costs

The trial court awarded Striever attorney's fees and costs of $7,643.00, plus conditional appellate fees.  The court awarded these amounts based on its authority under both rule 91a and the TCPA.

In his third issue, Sanchez asserts that if we reverse the dismissal order we should also vacate the award of fees and costs.  He also requests a remand for assessment of attorney's fees and costs in his favor under rule 91a.7.

The version of rule 91a applicable when this suit was filed in January 2019 mandated an award of reasonable and necessary attorney's fees and costs to the party prevailing on a rule 91a motion.[10]  If a court orders dismissal of an action under the TCPA, it must award attorney's fees and costs to the movant.  *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).  Unlike rule 91a, the TCPA does not apply a "prevailing party" framework for fee awards.

Because we have reversed the dismissal order on both TCPA and rule 91a grounds, we sustain Sanchez's third issue, vacate the award of attorney's fees and costs, and remand for further proceedings consistent with this opinion.  *See Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

---

[10] The rule was amended effective September 1, 2019, and now any award of fees and costs is discretionary, not mandatory.  Tex. R. Civ. P. 91a.7 & cmt. 2019.

21

## Conclusion

We reverse the trial court's dismissal order and vacate the award of attorney's fees and costs. We remand the case to the trial court for further proceedings consistent with this opinion.


/s/     Kevin Jewell
        Justice


Panel consists of Justices Christopher, Jewell, and Hassan. (Hassan, J., concurring and dissenting).