Opinion filed June 15, 2023



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00321-CV

_____

## GUARDIANSHIP OF SHEILA MCCONNELL WORKMAN, AN INCAPACITATED PERSON

**On Appeal from the 90th District Court**
**Stephens County, Texas**
**Trial Court Cause No. CV33058**

## O P I N I O N

Appellant, Mike Reilly, prepared and sent a letter to Phyllis Copeland and Connie Wooten concerning the pending sale of their sister Sheila's interest in a family property. Reilly's letter stated that the contract to sell Sheila's interest was "likely invalid" and that Sheila's husband "was possibly, fraudulently induced" to sign the agreement on her behalf. After they received the letter, Phyllis and Connie filed a petition seeking a guardianship over Sheila. They also secured a temporary restraining order, which halted the sale. Appellee, Texas Ranch Farm & Minerals,

LLC, the buyer, intervened in the guardianship proceeding and asserted causes of action against Reilly for tortious interference with a contract and civil conspiracy.

This appeal concerns the trial court's denial of Reilly's motion to dismiss under the Texas Citizens' Participation Act (the TCPA). TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–.013 (West 2020 & Supp. 2022). In his motion, and on appeal, Reilly maintains that the causes of action asserted by Texas Ranch intrude on his right to encourage his fellow citizens to seek judicial review of civil disputes and that Texas Ranch has failed to meet its prima facia burden as to each asserted cause of action, as required by the TCPA.

We hold that the causes of action asserted against Reilly by Texas Ranch implicate Reilly's right to petition under the TCPA. However, we also conclude that Texas Ranch met its prima facie burden on its cause of action for tortious interference with a contract. Therefore, we (1) affirm the trial court's order denying Reilly's motion to dismiss in connection with Texas Ranch's cause of action for tortious interference with a contract but (2) reverse the trial court's order denying Reilly's motion to dismiss with respect to Texas Ranch's cause of action for civil conspiracy, and we remand that claim to the trial court for a determination of Reilly's claims for attorneys' fees and sanctions.

## I. *Factual Background*

Phyllis and Connie each own an undivided one-third interest in a 577-acre property near Possum Kingdom Lake. The remaining one-third interest is owned by the estate of Sheila McConnell Workman; Sheila passed away in late 2022. In addition to their respective one-third interests, Connie, Phyllis, and the estate of Sheila own a preferential option to purchase each other's interests.

Prior to her death, Sheila was mentally and physically disabled. As such, her affairs were managed by Edd Workman, her husband, under a durable power of attorney.

In February 2022, Edd entered into a Farm and Ranch Contract and agreed to sell Sheila's interest to Texas Ranch.[1] Shortly after Edd signed the agreement, Reilly claims that he was approached by Melinda Harvey, who was Edd and Sheila's daughter. Because Melinda was concerned that Texas Ranch may have taken advantage of Edd in negotiating the sale, she asked Reilly—a real estate agent—for advice. Reilly spoke with Edd and reviewed several documents associated with the transaction. Reilly then offered to arrange for the Workmans to meet and discuss the situation with an attorney, Tim Mendolia. In fact, Reilly paid Mendolia an initial retainer on their behalf.

Reilly also prepared and sent a letter to Phyllis and Connie. Reilly's letter began by informing the sisters that Edd had signed a "purported contract" to sell Sheila's interest. The letter placed the word "contract" in scare quotes and stated that the agreement was "likely invalid." It further stated that Edd "was possibly, fraudulently induced" to sign the contract.

Reilly's letter stated that he was trying to help Edd and Sheila based on his conviction that his father—who employed Edd as a foreman on a family property in the 1960s—would have done the same thing. Toward that end, the letter indicated that Reilly had retained Mendolia to represent Edd and Sheila and that Mendolia would formally notify them of their right to exercise their purchase options. The

---

[1] In June 2021, Edd attempted to transfer Sheila's interest in the property to himself under a Gift Special Warranty Deed. Phyllis and Connie maintain that this transfer was ineffective, because the power of attorney did not authorize Edd to make gifts. *See* TEX. EST. CODE ANN. § 751.032 (West 2020). However, regardless of whether the Gift Special Warranty Deed was valid, the Farm and Ranch Contract also purports to sell any interest that Edd owned in the property.

letter concluded with a request for a meeting with Phyllis and Connie to "discuss various options to move forward."

The record contains no direct evidence that Reilly subsequently met with Phyllis and Connie as the letter suggested, and Reilly specifically denies that such a meeting took place. However, on April 12, 2022, Phyllis and Connie filed an application to have Phyllis appointed as guardian over Sheila, alleging that Edd was not providing appropriate care for Sheila. In their petition, Phyllis and Connie point to Reilly's letter as evidence of Sheila's inability to care for herself; a copy of the letter was attached to their application. Shortly after the guardianship application was filed, the trial court signed a temporary restraining order, which prohibited Edd from undertaking any actions to transfer or dispose of Sheila's real or personal property.[2] Thereafter, Edd, Connie, and Phyllis entered into a letter agreement to keep the restraining order in effect until an Attorney Ad Litem had investigated the matters in dispute.

Texas Ranch intervened in the guardianship proceeding and filed a third-party action against Reilly, Melinda, and James A. Thompkins, who is alleged to be Melinda's boyfriend. The intervention asserts causes of action against Reilly for tortious interference with a contract and civil conspiracy.

## II. *Analysis*

Reilly filed this appeal after the trial court denied his TCPA motion to dismiss.[3] One purpose of the TCPA is to protect citizens from retaliatory lawsuits that are meant to intimidate or silence them on matters of public concern. *Dallas*

---

[2]A copy of the temporary restraining order was included in the appendix to Reilly's brief, but it does not appear in the clerk's record. The parties do not dispute its general nature and effect.

[3]An interlocutory appeal may be taken from the denial of a motion to dismiss under the TCPA. *See* CIV. PRAC. & REM. § 51.014(12).

4

*Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The Legislature enacted the TCPA "to safeguard 'the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law'" while, at the same time, protecting a person's right "to file meritorious lawsuits for demonstrable injury." *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 845, 847 (Tex. 2021) (quoting CIV. PRAC. & REM. § 27.002).

To effectuate this dual purpose, the TCPA employs a three-step process to determine whether a lawsuit or claim is subject to dismissal. *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). First, the movant must demonstrate by a preponderance of the evidence that a legal action is based on, or in response to, the movant's exercise of one of three rights protected by the statute: (1) the right of free speech, (2) the right to petition, or (3) the right of association. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *see also Montelongo*, 622 S.W.3d at 296. Next, if the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence" a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. § 27.005(c); *Montelongo*, 622 S.W.3d at 296. Finally, even if the nonmovant meets that burden, the trial court is required to dismiss the legal action if the movant establishes an affirmative defense or other grounds on which the movant is entitled to judgment as a matter of law. CIV. PRAC. & REM. § 27.005(d).

Reilly raises two issues, in which he asserts that the trial court's rulings did not comply with the first two steps of the process. We review de novo the trial court's denial of the motion to dismiss. *Rossa v. Mahaffey*, 594 S.W.3d 618, 624 (Tex. App.—Eastland 2019, no pet.). Further, whether the TCPA applies to a

5

particular claim is a question of statutory construction that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

1. *Step One: Does the TCPA Apply?*

To invoke the protections of the TCPA, Reilly must show that the claims asserted by Texas Ranch are "based on or in response to" his exercise of a protected right. CIV. PRAC. & REM. § 27.003(a). In assessing whether a protected right is at issue, we consider the pleadings and affidavits that state the facts on which liability is based to determine the true nature of the dispute. *See* CIV. PRAC. & REM. § 27.006(a); *David H. Arrington Oil & Gas Operating, LLC v. Wilshusen*, 630 S.W.3d 184, 190 (Tex. App.—Eastland 2020, pet. denied); *see also Clayton Mountain, LLC v. Ruff*, No. 11-20-00034-CV, 2021 WL 3414754, at *5 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op.). The plaintiff's pleading is the "best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. 1936)); *Wilshusen*, 630 S.W.3d at 190. Therefore, we determine the TCPA's applicability based on a holistic review of the pleadings. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018).

In this case, Reilly maintains that the facts alleged by Texas Ranch are based on his protected "right to petition." Under the TCPA, the right to petition includes, among other things, "a communication that is *reasonably likely to encourage consideration or review of an issue by a . . . judicial . . . body.*" CIV. PRAC. & REM. § 27.001(4)(C) (emphasis added). As such, we must ascertain whether Reilly's alleged communications with the sisters "encouraged" litigation and judicial consideration or review of a disputed issue.

Texas Ranch's Second Amended Petition in Intervention alleges the following regarding such communications:

6

- Reilly "intentionally joined in the effort to prevent the sale of the Property" to Texas Ranch.

- Reilly "communicated with [Phyllis and Connie] with the intent to prevent the sale."

- Reilly "reported" to Phyllis and Connie that the contract was invalid, and that Edd "had been possibly, fraudulently induced" to sign the contract.

- Based on his alleged actions, "it is obvious that Mr. Reilly . . . intended to stop the sale . . . and conspired . . . to prevent the sale."

- Reilly caused "actions to be taken based, in part, on [his] statements."

- Reilly "knew that [his statements] would interfere" with Texas Ranch's rights, "just as he intended when he made the statements."

When read as a whole, Texas Ranch's pleadings suggest that Reilly attempted to convince Phyllis and Connie to proceed with litigation, which would necessarily invoke judicial consideration or review of the parties' disputes, that would interfere with the parties' performance of the contract. Allegations of such intentionally calculated statements are more than sufficient to satisfy the TCPA's requirement for communications that are "reasonably likely to encourage consideration or review of an issue" by a judicial body. CIV. PRAC. & REM. § 27.001(4)(C).

Texas Ranch argues that Reilly's alleged communication with Phyllis and Connie is not a protected right under the TCPA because the sale of Sheila's interest in the property is a private transaction between private parties, not an issue of public concern. However, the TCPA's definition of "right to petition" that is central to the disposition of this appeal does not explicitly require that the communication at issue involve a matter of public concern. Despite this, Texas Ranch also maintains that the purposes and legislative history of the TCPA mandate a showing of a public concern in this instance.

In support of its position, Texas Ranch relies on *Jardin v. Marklund*, 431 S.W.3d 765 (Tex. App.—Houston [14th Dist.] 2014, no pet.), *overruled on other*

*grounds*, *Houston Tennis Ass'n, Inc. v. Thibodeaux*, 602 S.W.3d 712, 719 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The court's holding in *Jardin* did not ultimately depend on a reading of the TCPA that a public concern requirement should be imposed on all communications thereunder. *See* 431 S.W.3d at 773 (concluding that the TCPA was inapplicable because the claims asserted were not "based on, relate[d] to, or . . . in response" to the communications of the movant, but were rather based on the claims of the company where the movant served as an officer) (quoting former CIV. PRAC & REM. § 27.005(b)). Nevertheless, *Jardin* includes an extensive discussion of the Act's purposes, and the court there appears to conclude that a public concern requirement should always be associated with the TCPA's definitions of the three categories of protected rights. *Id.* at 772–73.

We are not persuaded that the TCPA imposes a public concern requirement on every claim that is brought under the statute, particularly in light of recent statutory amendments. Since its inception in 2011, the TCPA has served to protect three categories of rights: (1) the right of association, (2) the right of free speech, and (3) the right to petition. Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.005(b), (b)(1), 2011 Tex. Gen. Laws 961, 963 (amended 2013, 2019) (current version at CIV. PRAC. & REM. § 27.005(b), (b)(1)). From the outset, the definition of the right to free speech has required a "connection with a matter of public concern." *Id.*, sec. 27.001(3), 2011 Tex. Gen. Laws at 961 (amended 2013, 2019) (current version at CIV. PRAC. & REM. § 27.001(3)). However, the "right of association" definition and most of the "right to petition" definitions did not contain such a requirement or language. *Id.*, sec. 27.001(2), (4), 2011 Tex. Gen. Laws at 961 (current versions at CIV. PRAC. & REM. §§ 27.001(2), (4)).

Following the enactment of the TCPA, courts were tasked with deciding whether the right of association should include a public concern requirement, which

8

resulted in conflicting decisions among the courts of appeals. *See, e.g.*, *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 585 (Tex. App.—Fort Worth 2019, pet. denied) (holding that the "common interest" component of the right of association requires a public interest but recognizing that its holdings "arguably conflict with several opinions from the Austin Court of Appeals"); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied) (applying the right of association to communications between defendants who joined together to pursue a common interest in a private business matter). Subsequently, the legislature amended the "right of association" definition. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 1, 2019 Tex. Gen. Laws 684 (amending Civ. Prac. & Rem. § 27.001). The amended definition provides that the pursuit of "common interests" in connection with the right of association must relate to "a governmental proceeding or a matter of public concern." *Id.* Notably, however, the 2019 amendments did not change any of the "right to petition" definitions, including the definition that is at issue in this case. *Id.*

When interpreting a statute, we "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). This principle is particularly applicable when, as here, the Legislature has twice visited a dilemma: once to enact a statute and once to amend it. The Legislature clearly knows how and when a public concern requirement should be incorporated into the definition of a TCPA right, and it did not do so in connection with the definition of "right to petition" in the 2011 Act. The Legislature also did not change the "right to petition" definition when it amended the TCPA in 2019, even though the same amendments explicitly added a "public concern" requirement to the right of association definition.

9

Our interpretation of subpart (4)(C) is consistent with the TCPA's stated purpose to encourage and safeguard the right to petition. CIV. PRAC. & REM. § 27.002.[4] The right to petition is not limited to litigation in the public sphere. The right to petition the government for redress—even in matters of disputes that are completely private in nature—is constitutionally protected under the First Amendment of the United States Constitution. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 394 (2011) (recognizing that "[t]he Petition Clause undoubtedly does have force and application in the context of a personal grievance addressed to the government"); *Thomas v. Collins*, 323 U.S. 516, 531 (1945) ("The grievances for redress of which the right of petition was insured, and with it the right of assembly, are not solely religious or political ones."). Likewise, the Texas constitution guarantees open courts to every citizen and a remedy by due course of law for "an injury done [them] in [their] lands, goods, person or reputation." TEX. CONST. art. I, § 13. The right to petition is of such importance that the United States Supreme Court has extended it even to communications that relate to the potential assertion of rights. *Bhd. of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 5 (1964) ("[T]he right of the workers . . . to advise [each other] concerning the need for legal assistance . . . is an inseparable part of [their] constitutionally guaranteed

---

[4]Section 27.002 provides that the stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, *and otherwise participate in government*." CIV. PRAC. & REM. § 27.002 (emphasis added). The *Jardin* court reasoned that the phrase "otherwise participate in government" limits the scope of the TCPA to communications that are "analogous to participating in government." 431 S.W.3d at 771. It then equates "participation in government" with the public interest, concluding that all communications under the TCPA must therefore involve a public interest. *Id*. We find this reading of Section 27.002 to be overly restrictive. To be sure, the word "otherwise" assumes that participation in government is an important component that is included within the preceding list of rights. However, the phrase "otherwise participate in government" is preceded by the word "and," marking an intention to expand upon the enumeration of rights that precede it, rather than to limit them.

right to assist and advise each other."). A plain reading of subsection (4)(C) demonstrates that the Legislature contemplated the right to communicate with others' legal rights when it extended the TCPA's protection to communications that encourage fellow citizens to seek judicial consideration of issues.

Both Texas Ranch and the court in *Jardin* point to the legislative history of the TCPA, arguing that—in implementing the Act—legislators were concerned about threats to the free discussion of issues that were of public concern. 431 S.W.3d at 772. From this history, Texas Ranch argues, and *Jardin* suggests, that a public concern requirement should be imposed on all forms of communication under the TCPA. *Id.* However, extrinsic aids such as legislative history commentary are only applicable when the text of a statute is ambiguous. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Here, because the text of subsection (4)(C) is abundantly clear, the text is also determinative of legislative intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("when possible, we discern [legislative intent] from the plain meaning of the words chosen"); *see also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("the words [the Legislature] chooses should be the surest guide to legislative intent").

Texas Ranch also argues that the TCPA is inapplicable because Reilly's letter is analogous to a pre-suit demand, citing *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724 (Tex. App.—Dallas 2016, pet. denied) and *Chandni, Inc. v. Patel*, 623 S.W.3d 425 (Tex. App.—El Paso 2019, pet. denied). According to Texas Ranch, pre-suit demands are not protected communications under the TCPA. However, *Levatino* and *Chandni* are distinguishable.

In *Levatino*, a party that was sued after it sent a demand letter to the nonmovant asserted that the letter they prepared was protected speech under

11

subsection 4(C) because, as a consequence of the letter, they were "reasonably likely to encourage consideration" of an issue by a judicial body. 486 S.W.3d at 729. However, the Dallas Court of Appeals rejected this argument, holding that the letter "sought to *avoid* judicial [consideration or] review of the dispute" rather than to encourage it. *Id.*

Although we do not construe Reilly's letter to be a "demand letter" in a legal sense, his letter does accuse a third-party of fraudulent conduct and seemingly urges the sisters, and others, to pursue legal action against the purported bad actor. Nevertheless, Reilly's letter does not "demand" anything. Rather, the letter is alleged to have been sent to the sisters based on Reilly's intentional effort to spur them on to pursue litigation. The intent of such a communication would logically encourage one to seek and invoke the judicial process, not to avoid it. *Chandni*, on the other hand, does not involve a claim that subsection 4(C) applies, and therefore does not relate to Reilly's TCPA assertion.

Texas Ranch cannot have it both ways. Its central factual theory—that Reilly interfered in the performance of the agreement when he prompted Phyllis and Connie to take action—falls squarely within definition of the right to petition in subsection 4(C). Contrary to Texas Ranch's contention, a public concern component is not required when the "right to petition" is raised under the TCPA. Further, by sending his letter to the sisters, in addition to the overall gist of the letter, one could also reasonably conclude that the "legal terminology" used by Reilly constitutes communications that would *likely encourage the consideration or review of this dispute by a judicial body*. And, in fact, it has.

We hold that the protections of the TCPA extend to Reilly's alleged communication(s) that encouraged Phyllis and Connie to pursue claims in

connection with the pending contract for the sale of Sheila's interest in the property. Accordingly, we sustain Appellant's first issue on appeal.

2. *Step Two: Has Texas Ranch Established a Prima Facie Cause of Action Against Reilly?*

To satisfy its prima facie burden under the TCPA, Texas Ranch must produce "clear and specific" evidence in support of each of its causes of action. CIV. PRAC. & REM. § 27.005(c). The burden is not stringent. Under the Act, "prima facie" is the "minimum quantum of evidence [that is] necessary to support a rational inference that the allegation of fact is true." *USA Lending Grp., Inc. v. Winstead PC*, No. 21-0437, 2023 WL 3556701, at *2 (Tex. May 19, 2023) (citing *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (quoting *Lipsky*, 460 S.W.3d at 590)). Evidence is considered to be "clear and specific" if it provides sufficient detail to show the factual basis for the claim that is asserted. *Id.* (citing *Lipsky*, 460 S.W.3d at 590–91). Thus, Texas Ranch "'must provide enough detail to show the factual basis for its claim' and must provide enough evidence 'to support *a rational inference* that the allegation of fact is true.'" *Hall*, 579 S.W.3d at 377 (quoting *Lipsky*, 460 S.W.3d at 590–91) (emphasis added); *see also* CIV. PRAC. & REM. § 27.005(c); *Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 214 (Tex. App.—Eastland 2019, pet. denied). In determining whether a legal action should be dismissed, the TCPA requires that we consider the evidence presented by the parties, as well as the pleadings. CIV. PRAC. & REM. § 27.006(a). We are also mindful that a TCPA motion to dismiss is not a trial on the merits and is not intended to be a substitute for either a trial or the summary judgment proceeding established by the Texas Rules of Civil Procedure. *Stallion*, 592 S.W.3d at 215.

In its pleadings, Texas Ranch asserts causes of action against Reilly for tortious interference with a contract and civil conspiracy. We hold that Texas Ranch

has met its prima facie burden for the tortious interference with a contract cause of action, but not for the civil conspiracy cause of action.

## A. *Tortious Interference with a Contract*

The elements of a claim for tortious interference with a contract are (1) an existing contract subject to interference, (2) a willful, intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damage or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Davis v. Gulf Coast Auth.*, No. 11-19-00309-CV, 2020 WL 5491201, at *6 (Tex. App.—Eastland Sept. 11, 2020, no pet.) (mem. op.). For this claim, Reilly asserts that Texas Ranch has failed to provide clear and specific evidence of willful interference (element 2) and proximate cause (element 3).

With respect to the element of willful interference, Reilly argues that because the sisters were not a *party* to the contract, his communications with them do not constitute interference, citing to our decision in *Duncan v. Hindy*, 590 S.W.3d 713 (Tex. App.—Eastland 2019, pet. denied). In *Duncan*, we quoted the holding in *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) for the proposition that willful interference occurs when the defendant induces "one of the contracting parties" to breach its obligations under an agreement. 590 S.W.3d at 726. Reilly argues that, in order to support a claim for tortious interference with a contract, *Duncan* requires proof of direct communications between the defendant and a *party* to the contract. We believe that this reading of *Duncan* is overly restrictive.

To be sure, *Duncan* and *Funes* are not the only cases that have expanded the concept of willful interference by describing it as an inducement that is directed at a party to the contract. *See, e.g.*, *Hart v. Manriquez Holdings, LLC*, 661 S.W.3d 432, 439 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Reg'l Specialty Clinic, P.A. v.*

14

*S.A. Randle & Assoc., P.C.*, 625 S.W.3d 895, 902 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *W. Mktg., Inc. v. AEG Petroleum, LLC*, 616 S.W.3d 903, 921 (Tex. App.—Amarillo 2021), *opinion modified on reh'g*, 621 S.W.3d 88 (Tex. App.—Amarillo 2021, pet. denied); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App.—Fort Worth 2009, pet. denied). These formulations assume the facts that most commonly give rise to tortious interference claims: a direct communication between the alleged tortfeasor and the *party* being induced to breach.

However, a cause of action for tortious interference with a contract encompasses not only actual inducement of a breach of a contract but also other invasions of contractual relations. *Moore v. Bushman*, 559 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App.—Texarkana 1999, pet. denied); *Bellefonte Underwriters Ins. Co. v. Brown*, 663 S.W.2d 562, 573 (Tex. App.—Houston [14th Dist.] 1983), *aff'd in part, rev'd in part on other grounds*, 704 S.W.2d 742 (Tex. 1986). Thus, actionable interference includes any act which retards, makes more difficult, or prevents performance. *Davis*, 2020 WL 5491201, at *10; *Moore*, 559 S.W.3d at 551; *Seelbach*, 7 S.W.3d at 757; *Bellefonte*, 663 S.W.2d at 573. For that reason, a direct communication between Reilly and Edd is unnecessary to establish an actionable claim.

Reilly also maintains that his communications with Phyllis and Connie encouraged them, at most, to consider exercising their options. He then argues that his letter cannot be reasonably construed as encouraging them to pursue litigation that would interfere with the performance of the contract, much less a request for a guardianship. While this argument is compelling in connection with Texas Ranch's cause of action for civil conspiracy, we do not find it to be persuasive in connection with the tortious interference with a contract cause of action.

15

Reilly's letter to Phyllis and Connie does not merely mention their preferential options to purchase the property. Instead, Reilly's letter focuses on the contract and he uses legal terminology to describe it—his letter states that he believes the contract is "invalid" and that Edd was "possibly, fraudulently induced" to sign it, all the while holding himself out as an individual with extensive experience in real estate transactions. Further, Reilly suggests that he and the sisters should meet to "discuss *various* options to move forward" (emphasis added). From this language, it could be rationally inferred that Reilly was encouraging Phyllis and Connie to take action to challenge and rectify the situation (to prevent the potential sale of Sheila's interest in the property) and that exercising their preferential options to purchase the property was only one of several possibilities. *See Hall*, 579 S.W.3d at 377. While the letter does not outline the specific litigation that Phyllis and Connie should and ultimately did pursue, it can be rationally inferred that Reilly sent this letter because he hoped the family would do something to prevent the performance of the agreement. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (intentional interference requires that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it" (quoting *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992))).

Because of similar reasons, we conclude that Texas Ranch has met its prima facie burden with respect to the issue of proximate cause. The element of proximate cause has two components: cause in fact and foreseeability. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 518 (Tex. 2019).

For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not

16

have occurred. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). As stated above, the petition that Phyllis and Connie filed specifically cited to and attached Reilly's letter as evidence in support of their request for a guardianship over Sheila. Although the letter was not the only evidence that was referred to and cited in the petition, it can be rationally inferred from the petition, as well as the letter itself, that Reilly's communications with Phyllis and Connie was a substantial factor in motivating Phyllis and Connie to bring suit.

Likewise, we conclude that Phyllis and Connie's attempt to halt the performance of the contract was a foreseeable consequence at the time that Reilly transmitted the letter to them. In that regard, it is not necessary for Reilly to have anticipated the exact litigation strategy that Phyllis and Connie would advance. Rather, it is enough—for purposes of assessing proof under the TCPA—if it can be *rationally inferred* that Reilly anticipated that *some action* would be taken to halt the sale. "Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *see also M.D. Anderson*, 578 S.W.3d at 519 (quoting *Walker*, 924 S.W.2d at 877). It does not require that a person must anticipate the precise manner in which an injury will occur. *M.D. Anderson*, 578 S.W.3d at 519.

We have concluded above that Reilly's intention to interfere, or suggest that the sisters interfere, with the sale can be rationally inferred from the contents of his letter. For the same reasons, it can also be rationally inferred that Reilly could have reasonably foreseen that Phyllis and Connie would do what he intended or suggested—that is, undertake actions to challenge and interfere with the performance of the agreement. As such, Texas Ranch has also met its prima facie burden with respect to the issue of proximate cause. Direct evidence is not required

17

to satisfy the "clear and specific" evidence threshold, as Appellant suggests; rational inferences will suffice.

Our determination that Texas Ranch has stated a prima facie cause of action for actionable interference does not address, nor do we express any opinion on, the question of whether Reilly had legal justification for his actions. Here, Reilly does not rely on, nor has he raised, the defense of legal justification at this stage. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) (making the issue of legal justification an affirmative defense). Nevertheless, we note that should such a defense be raised—either in a dispositive motion or at trial—it would encompass a broad set of considerations,[5] including the effect of an adverse judgment on Reilly's right to petition, as well as the social utility of communications that seek to prevent perceived fraud or other wrongdoing.

### B. *Civil Conspiracy*

The elements of a civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983); *Baxsto, LLC v. Roxo*

---

[5]Whether a defendant's interference with a contract is justified requires a consideration of: (1) the nature of the defendant's conduct; (2) the defendant's motive if he claims to have exercised a colorable legal right in good faith; (3) the plaintiff's interests in his contract; (4) the interests sought to be advanced by the defendant; (5) society's interests in protecting the defendant's freedom of action and the plaintiff's contractual interests; (6) the proximity or remoteness of the defendant's conduct to the interference; and (7) the relations between the plaintiff and the defendant. *McCall v. Tana Oil & Gas Corp.*, 82 S.W.3d 337, 347 (Tex. App.—Austin 2001), *rev'd in part*, 104 S.W.3d 80 (Tex. 2003); *see also Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 714 (Tex. 2001); RESTATEMENT (SECOND) OF TORTS § 767 (AM. L. INST. 1979).

*Energy Co., LLC*, No. 11-21-00183-CV, 2023 WL 3010965, at \*22 (Tex. App.—Eastland Apr. 20, 2023, no pet. h.).

We conclude that Texas Ranch has failed to meet its prima facie burden with respect to element 3 above—a meeting of the minds. While Reilly's letter appears to prompt action by Phyllis and Connie and even states that Reilly desired to meet with the sisters to discuss their options, it does not propose that *specific* actions be taken by them. *Agar*, 580 S.W.3d at 141. Indeed, if anything, it defers the discussion of any specific actions for the future. Texas Ranch argues that a future meeting likely took place based on the allegations contained in Phyllis and Connie's pleadings. However, even if the proposed meeting did occur, there is no evidence in the record from which it can be rationally inferred that such a meeting resulted in an agreement between Reilly, Phyllis, and Connie as to a particular course of action that they should pursue.

Further, while the letter appears to imply that Phyllis and Connie could exercise their options as a means of preventing the sale, the sisters ultimately chose a different course of action—filing a guardianship application and requesting a temporary restraining order. This course of action was not mentioned in Reilly's letter, nor is there evidence of any other communication made by him in which he suggested it. In short, there is no evidence from which it can be rationally inferred that there was a meeting of the minds concerning the particular course of action that was ultimately pursued by the sisters that impaired the performance of the agreement. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968) ("there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy." (quoting 15A C.J.S. *Conspiracy* § 2 (1967))).

Based on the foregoing, we sustain in part, and overrule in part, Appellant's second issue. We sustain Appellant's second issue with respect to Appellee's cause of action for civil conspiracy and we overrule Appellant's second issue with respect to Appellee's cause of action for tortious interference with a contract.

### III. *This Court's Ruling*

We hold that (1) the TCPA applies to the claims Texas Ranch has asserted against Reilly, (2) Texas Ranch has successfully met its prima facie burden with respect to its cause of action for tortious interference with a contract, and (3) Texas Ranch has failed to meet its prima facie burden with respect to its cause of action for civil conspiracy. Accordingly, we affirm the trial court's order in part, and we reverse the order in part and remand Texas Ranch's cause of action for civil conspiracy to the trial court for a determination of Reilly's claims for attorneys' fees and sanctions. *See* CIV. PRAC. & REM. § 27.009(a); *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 442 (Tex. 2017). In all other respects, the trial court's order is affirmed.


W. STACY TROTTER
JUSTICE


June 15, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

20